# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1607

_____

United States of America,

        Plaintiff – Appellee,

    v.

Richard Steele,

        Defendant –Appellant.

Appeal from the United States
District Court for the
District of South Dakota.

_____

Submitted: November 12, 2008
Filed:  December 19, 2008

_____

Before MURPHY, RILEY, and GRUENDER, Circuit Judges

_____

MURPHY, Circuit Judge.

Richard Steele was convicted by a jury of first degree burglary, assault resulting in serious bodily injury, assaulting a federal officer, and three counts of assault with a dangerous weapon.  Steele appeals, asserting that the district court[1] erred by denying his motions for judgment of acquittal and for severance of the charge for assaulting a federal officer, by admitting evidence of his prior acts and conviction, by its

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

instruction on the definition of bodily injury, and by applying bodily injury enhancements to his sentence. We affirm.

At the time of the incidents which led to his indictment, Richard Steele was living with Ivory Three Legs and their son, Dusty Steele, on the Standing Rock Sioux Indian Reservation. On October 1, 2005, Steele slapped Ivory several times while they were driving home, causing her face and lip to swell and bleed. Steele then pulled over, brandished a knife, and threatened to kill her. Ivory attempted to escape several times, but Steele grabbed her to keep her in the car. At some point she suggested they go pick up Dusty. When Steele stopped for gas, Ivory asked the attendant to call the police and hid in the bathroom until Steele drove away. For his acts on that day, Steele was charged with assault with a dangerous weapon under 18 U.S.C. § 113(a)(3) (Count 7r).

On December 15, 2006, Ivory's mother, Pearl Three Legs, asked Bureau of Indian Affairs police officer Doug Wilkinson to conduct a welfare check on her grandson. Dusty was then at the home of Steele's mother, Salina Jamerson, and Officer Wilkinson went to her house and Salina let him in. Steele was there and appeared angry that Pearl had called the police. Wilkinson testified that Steele began yelling and sweeping the floor clear with his feet to make room for a fight. Neither Wilkinson nor Salina could calm him. Wilkinson decided to arrest Steele for disorderly conduct because he was a danger to Dusty, Salina, Ivory, and Pearl. Steele resisted arrest and jammed his thumbs into Wilkinson's eyes, causing pain and scratches which Wilkinson had to have examined at the hospital. Steele was thereafter charged with assaulting a federal officer under 18 U.S.C. § 111 (Count 4r).

Steele was also charged with two additional counts of assaulting Ivory with a dangerous weapon. On January 16, 2006 he slapped and choked Ivory, slammed her into a mirror, and knocked her to the ground where he kicked her several times with his tennis shoes on. Ivory testified that Steele put on brass knuckles, and some of her

injuries were consistent with their use. Steele admits fighting but denied using brass knuckles or kicking Ivory. The incident on that day resulted in the charge in Count 6r. On December 28, 2006 Steele punched Ivory, choked her, and kicked her with his tennis shoes on. She was hospitalized with a concussion and contusions on her scalp and face. Although Steele denied any physical confrontation on that day, he was charged with assault with a dangerous weapon in Count 3r.

The charges of burglary and assault resulting in serious bodily injury arose from an incident on March 2, 2007 at the residence of Pearl Three Legs. Steele kicked in the door of Pearl's residence, entered along with his mother, and began hitting Ivory. Pearl testified that she obtained two knives from the kitchen in an effort to convince Steele to leave. According to witnesses, Steele punched Pearl in the face, breaking her jaw and several facial bones, which required oral surgery. Steele and his mother denied breaking into Pearl's residence and claimed that he had shoved Pearl in self defense.

The jury convicted Steele on each of these counts after a three day trial.[2] The district court imposed concurrent sentences of 108 months for the burglary and 24 months for each of the assaults. Steele appeals his convictions, arguing that the evidence was insufficient and that the district court erred by trying all counts in a single trial, by admitting evidence of his past conduct, and by erroneously instructing the jury on bodily injury. He also argues that sentencing enhancements based on the victims' injuries should not have been imposed for three of the offenses.

Steele moved for a judgment of acquittal at the close of the government's case and again at the close of the evidence, arguing that there was insufficient evidence to

_____

[2]Two additional counts of assault resulting in serious bodily injury, and an additional count of assault with a dangerous weapon were dismissed before trial. Steele was acquitted on a less serious alternative charge relating to the assault on Officer Wilkinson.

sustain any conviction. The motions were denied. Steele filed a renewed motion after the verdict, which was denied in a written order. Steele advances several arguments for why the evidence was insufficient. We review de novo the denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the government. United States v. Howard, 413 F.3d 861, 864 (8th Cir. 2005).

Steele argues that there was insufficient evidence that he intended to cause bodily harm to Ivory when he threatened her with a knife on October 1, 2005. Steele contends that his threat to kill Ivory was an idle one, and that the law should distinguish between those who merely make threats and those with an actual intent to harm the victim. Whether Steele had such an intent was a question of fact for the jury.

The facts here are similar to those in United States v. LeCompte, 108 F.3d 948 (8th Cir. 1997), where we upheld a conviction for assault with a dangerous weapon. The defendant in LeCompte had threatened a victim with a rock while she was lying on the ground. We observed that even though the defendant did not hit the victim with the rock, he "had physically attacked [her] with his fists and feet and knocked her down into a ditch where he continued to kick her and threaten her." Id. at 952. The victim testified that she had been afraid and feared she would be hit with the rock. Id. Here, Ivory testified that in the moments before Steele pulled the knife and threatened to kill her, he had slapped her, causing a swollen and bloody lip. Ivory's injuries combined with Steele's verbal threat to assault her with the knife supported the jury's finding that he intended to cause bodily harm. Steele argues that because he did not harm Ivory with the knife when he was capable of doing so, he could not have had the intent to harm her. Though this inference may be plausible, we will not disturb a conviction "[i]f the evidence rationally supports two conflicting hypotheses." United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004) (quoting Ortega v. United States, 270 F.3d 540, 544 (8th Cir. 2001)). Evidence was introduced that Ivory diffused the situation by suggesting that they pick up their son Dusty. We conclude

that a reasonable juror could have found that Steele had the intent to inflict bodily harm using the knife but abandoned it after Ivory mentioned their son.

The government must prove that the defendant used a dangerous weapon in the course of the assault in order to obtain a conviction under 18 U.S.C. § 113(a)(3). Two of Steele's convictions for assault with a dangerous weapon involved the use of tennis shoes, which he argues cannot be classified as a dangerous weapon. A dangerous weapon is defined as an object capable of inflicting bodily injury. LeCompte, 108 F.3d at 952–53. Numerous cases in this circuit upholding convictions for assault with a dangerous weapon have involved striking a victim with shod feet. See, e.g., United States v. Black Lance, 454 F.3d 922, 923 (8th Cir. 2006); United States v. Schmidt, 403 F.3d 1009, 1012 (8th Cir. 2005). Other courts have concluded that kicking victims with tennis shoes amounts to use of a dangerous weapon in some circumstances. See Arthur v. United States, 602 A.2d 174, 177–78 (D.C. App. 1992) (tennis shoes a dangerous weapon when used to stomp on victim's head); Louisiana v. Taylor, 485 So. 2d 117 (La. App. 1986) (tennis shoes dangerous when used to kick and stomp on victim's face).

Steele argues that because he only kicked Ivory in the torso, rather than on the head or face, his tennis shoes cannot be considered dangerous. Whether an object "constitutes a dangerous weapon in a particular case is a question of fact for the jury." United States v. Phelps, 168 F.3d 1048, 1055 (8th Cir. 1999). The government must present "sufficient evidence that appellant assaulted the victim with an object capable of inflicting bodily injury, not that the victim actually suffered bodily injury as a result of the assault." LeCompte, 108 F.3d at 952–53. The jury was able to observe the physical stature of both Steele and Ivory and heard about incidents in which Steele had acted in a violent manner. We conclude that there was sufficient evidence for the jury to find that Steele's tennis shoes were capable of inflicting bodily injury with his repeated kicks to Ivory's torso.

Steele argues that there was insufficient evidence to convict him of assaulting Officer Wilkinson because the officer had precipitated the confrontation by entering Salina's house without permission and arresting him without probable cause. The statute under which Steele was convicted only requires that the officer be "engaged in . . . official duties." 18 U.S.C. § 111(a)(1). Whether Wilkinson acted unlawfully is important to Steele's self defense claim, which he has the burden to prove. See United States v. Emeron Taken Alive, 262 F.3d 711, 714 (8th Cir. 2001) (noting that "[a] victim's use of unlawful force may justify the defendant's reciprocal use of force"). The jury was instructed that it could find that Steele acted in order to "protect himself . . . from what he reasonably believe[d] to be unlawful physical harm about to be inflicted by another." The record shows that Salina gave Wilkinson permission to enter her house and that Steele was extremely angry and made threatening gestures. This caused Wilkinson to believe that he posed a danger to others and had engaged in disorderly conduct under the tribal code. We conclude that a reasonable juror could determine that Wilkinson did not act unlawfully in entering the residence or arresting Steele and that Steele was not justified in using any force to resist the arrest.

Finally, Steele argues that the three witnesses to the March 2, 2007 incident gave inconsistent testimony that no reasonable juror could have believed. His convictions for burglary and assault with intent to cause serious bodily injury to Pearl Three Legs should therefore be vacated. Our review of the record shows, however, that the government witnesses gave consistent accounts about material details of Steele's conduct and that a reasonable juror could find their testimony credible. We conclude that the district court did not err by denying Steele's motions for judgment of acquittal because the evidence was sufficient to sustain a guilty verdict on all counts.

Steele argues that the district court erred in admitting evidence of prior similar acts under Federal Rule of Evidence 404(b), a decision that we review for abuse of discretion. United States v. Haukaas, 172 F.3d 542, 544 (8th Cir. 1999) (per curiam).

-6-

The district court does not abuse its discretion in admitting evidence under Rule 404(b) unless "it is clear that the evidence had no bearing on any of the issues involved." United States v. Johnson, 934 F.2d 936, 939 (8th Cir. 1991). Before trial the government notified Steele that it would attempt to introduce evidence of his prior similar acts, including his 2000 felony conviction for assault with a dangerous weapon, two revocations of supervised release, and resistance to arrest. After Steele moved in limine to exclude this evidence, the district court ruled that the government would be allowed to introduce only the evidence about the prior conviction, and then only if Steele opened the door with favorable character evidence or otherwise placed his intent at issue.

During cross examination of Pearl Three Legs, Steele's counsel asked about whether he had ever injured his son Dusty and about the knives Pearl used to try to convince Steele to leave her house on March 2, 2007. The government argued during the subsequent bench conference that these questions were an attempt to demonstrate Steele's good character and to convince the jury that Steele had acted in self defense, opening the door to evidence of his past conviction. The district court declined to rule on the evidence at this point. Later that day, however, Steele's counsel asked questions during his cross examination of Officer Wilkinson which suggested that he had initiated the physical conflict on December 15, 2006. The district court decided that this had opened the door for admission of Steele's prior conviction and his history of resisting arrest.

The government later asked FBI Agent Theodore Miller, who had investigated the December 28, 2006 assault on Ivory, whether he had examined Steele's criminal record. Just before evidence came in about Steele's prior conviction, the district court admonished the jury that the evidence could not be used to determine that Steele had a bad character, but only for limited purposes and listed the Rule 404(b) exceptions. The government also asked Agent Miller whether Steele's supervised release had ever been revoked and whether it was because he had resisted an arrest. Steele's counsel

objected to the latter question, arguing that the evidence was unfairly prejudicial and therefore inadmissible under Rule 403. The district court overruled the objection and admonished the jury to consider the past incident of resisting arrest only for the limited purposes of "motive, intent, something of that nature."[3]

Evidence of other crimes or acts is admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). To be admissible under Rule 404(b), the crime or conduct must be "(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) supported by sufficient evidence; and (4) its probative value . . . [must] not [be] outweighed by any prejudicial impact." United States v. Ruiz-Estrada, 312 F.3d 398, 403 (8th Cir. 2002). Steele concedes that there was sufficient evidence for the jury to find that he had committed the other acts, but asserts that the evidence of his prior conviction and resisting arrest were not relevant under any of the purposes listed in Rule 404(b), and that the district court failed to balance the probative value and risk of prejudice before admitting the evidence of the prior conviction.

Both the prior conviction for assault with a dangerous weapon and the prior conduct of resisting arrest are similar in kind to the charges on which Steele was being tried. The prior conviction was in 2000, and he resisted arrest in 2001. Both acts thus occurred within six years of Steele's instant offenses and were not too remote in time to be relevant for Rule 404(b) purposes. See United States v. Roberson, 439 F.3d 934, 941 (8th Cir. 2006) (finding prior offenses within eight years of the charged offense admissible under Rule 404(b)).

---

[3]In its instructions at the end of the trial the district court again reminded the jury of this limiting instruction.

-8-

Rule 404(a) bars the admission of evidence of other acts by a defendant "only if it is relevant *solely* on the question of a defendant's 'character or . . . propensity to commit the crime charged.'" United States v. Logan, 121 F.3d 1172, 1178 (8th Cir. 1997) (quoting United States v. Jones, 990 F.2d 1047, 1050 (8th Cir. 1993)) (emphasis added) (omission in original).  Here, the district court found that the evidence was relevant not to Steele's character, but to Officer Wilkinson's knowledge at the time that he "was approaching [Steele] and going into the residence."  Steele attacks this reasoning because the government did not ask Wilkinson whether he knew about the prior incidents and how that knowledge influenced his behavior.  Wilkinson had testified, however, that he knew Steele had recently been incarcerated and that this affected his choice of the type of force necessary to subdue Steele after he initially resisted arrest.

Steele also argued at trial that he had acted in self defense.  Evidence that rebuts a claim of self defense is admissible under Rule 404(b) if it shows an absence of mistake or accident.  Haukaas, 172 F.3d at 544.  Steele was attempting to show that he had acted in order to protect himself from what he reasonably believed to be unlawful physical harm about to be inflicted by Officer Wilkinson.  Evidence of Steele's prior assault conviction and resisting arrest is relevant to whether Officer Wilkinson used lawful force to arrest Steele and whether Steele was acting reasonably in self defense.  We can affirm the district court's evidentiary decision on this ground even if the government did not fully develop such a theory at trial.  See United States v. Crenshaw, 359 F.3d 977, 1000–02 (8th Cir. 2004).  In sum, we conclude that the evidence was relevant to issues other than Steele's character and was therefore appropriate for admission under Rule 404(b).

Steele contends in addition that the district court failed to balance the probative value and potential for prejudice before admitting evidence of his prior conviction. The record shows, however, that the district court specifically stated that it had performed the balancing analysis.  The evidence of the prior conviction and resisting

arrest were probative of Steele's intent to assault Officer Wilkinson because it tended to discredit Steele's suggestion that he was acting in self defense. In addition, the evidence did not present a risk of unfair prejudice or "an undue tendency to suggest decision on an improper basis." Fed. R. Evid. 403 advisory committee notes. The government presented the Rule 404(b) evidence very briefly and did not elicit details about either past act that could have inflamed the jury. When Steele testified on the second day of trial, he gave an extensive narrative about his prior assault conviction in an effort to show that he had acted in self defense rather than as the aggressor, and this testimony likely reduced the potential for unfair prejudice. We conclude that the district court did not abuse its discretion in finding that the probative value of the evidence outweighed its potential for prejudicial effect, or err by admitting evidence of Steele's prior assault conviction and his resisting arrest.

Before trial and again at its start, Steele moved under Federal Rules of Criminal Procedure 8(a) and 14(a) for a separate trial on the charge of assaulting a federal officer.[4] The district court denied both motions. Rule 8(a) allows a single indictment to charge a defendant with multiple offenses only if the offenses are of the same or similar character, based on the same act or transaction, or are parts of a common scheme or plan. This rule is interpreted broadly in favor of joinder. United States v. Delpit, 94 F.3d 1134, 1143 (8th Cir. 1996). Rule 14(a) provides a mechanism for relief from prejudicial joinder, allowing the court to order separate trials if trying several counts together would prejudice either the defendant or the government. The decision of whether to sever a trial is left to the district court's sound discretion, United States v. Lawson, 173 F.3d 666, 671 (8th Cir. 1999), and we will not reverse unless the defendant shows an abuse of discretion resulting in severe prejudice. United States v. Crouch, 46 F.3d 871, 875 (8th Cir. 1995).

---

[4] Steele also sought to sever a charge of assault on Darren Red Stone, a charge dismissed before trial.

Steele argues that the charge of assaulting a federal officer was of a different nature than the remaining charges. Offenses have the "same or similar character" when they "refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each overlaps." United States v. Boyd, 180 F.3d 967, 981 (8th Cir. 1999). The assault that Steele sought to sever is of a similar nature as the other assault charges contained in the indictment, and occurred within four months of two of the others. Had separate trials been held, the evidence of each alleged assault would likely have been admissible under Rule 404(b) in the other trial. Haukaas, 172 F.3d 544. Since there would have been a strong possibility of evidentiary overlap between the claims, the district court did not abuse its discretion in denying the motion to sever.

Steele also fails to articulate how he was "deprived of an appreciable chance for an acquittal" by the district court's decision to have a single trial. United States v. Koskela, 86 F.3d 122, 126 (8th Cir. 1996). A joint trial does not result in additional prejudice where evidence of one charge would have been admissible in a separate trial on another. Boyd, 180 F.3d at 983. Since it is likely that the evidence of each assault would have been admissible at both trials and the evidence on each count was substantial, we conclude that Steele has not shown that his chances of acquittal would have improved significantly had separate trials been conducted.

Steele argues that the district court improperly defined "bodily injury" when instructing the jury on the charge of assaulting a federal officer. Congress has provided for an enhanced penalty if such an assault involved a deadly or dangerous weapon or inflicted bodily injury. 18 U.S.C. § 111(b). The statute does not define "bodily injury" so the district court looked elsewhere. It adopted an abridged version of the definition in 18 U.S.C. § 1365(h)(4)[5] and instructed the jury that bodily injury

---

[5]The district court chose to omit two of the statutory examples of bodily injury: "illness" and "impairment of the function of a bodily member, organ, or mental faculty."

means "(A) a cut, abrasion, or bruise, (B) physical pain, or (C) any other injury to the body, no matter how temporary."

Steele objected that the proposed instruction seemed inconsistent with congressional purpose, but he did not offer an alternative definition at trial. He now contends that the district court should have used the definition of bodily injury from the sentencing guidelines. See U.S.S.G. § 1B1.1 cmt. n.1(b) ("any significant injury; e.g., an injury that is painful and obvious or is of a type for which medical attention ordinarily would be sought"). To preserve a jury instruction issue for appeal, an objection at trial must be "sufficiently specific to bring into focus the precise nature of the alleged error." Kight v. AutoZone, Inc., 494 F.3d 727, 735 (8th Cir. 2007). Steele's objection was unspecific, and he did not mention the guideline definition he now offers. Our review is therefore for plain error, and we will reverse only if the district court erred and that error "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." Id.

Steele contends that the instruction was an incorrect statement of the law because § 1365 is a statute that penalizes tampering with consumer products. Congress has indicated that the definition of serious bodily injury at § 1365(h)(3) is applicable outside of the tampering context, however, by incorporating that definition into a range of federal criminal statutes. See 18 U.S.C. § 113 (assaults within territorial jurisdiction); id. § 2119 (carjacking); 8 U.S.C. § 1324(a)(1)(B)(iii) (alien smuggling). We conclude that it was not error to apply the definition of bodily injury in § 1365(h)(4) in this case. Steele also argues that because a finding of bodily injury increases the maximum term of imprisonment from 8 to 20 years, a more restrictive definition should have been used. This argument presumes that the guideline definition is more restrictive than that in § 1365(h)(4), which is not obviously the case. We also note that Congress added the phrase "or inflicts bodily injury" as a basis for an enhanced sentence as part of an effort to increase penalties for those who assault federal law enforcement officers. See Violent Crime Control and Law Enforcement

-12-

Act of 1994, H.R. 3355, 103rd Cong. § 320101 (1994).  There is no reason to believe that a more restrictive definition of bodily injury would be consistent with congressional purpose.

We also conclude that any error in defining this term for the jury was not prejudicial.  Even if the district court had used the guideline definition of bodily injury, a reasonable jury could have found that the injuries suffered by Officer Wilkinson would satisfy that instruction.  Officer Wilkinson testified that Steele had jammed both thumbs into his eyes, that the attack was extremely painful, and that he sought medical attention. Wilkinson also suffered scratches next to his eye.  Together, these qualify as "an injury that is painful and obvious or is of a type for which medical attention ordinarily would be sought."  U.S.S.G. § 1B1.1 cmt. n.1(b).  We conclude that any error in the district court's choice of definition of bodily injury did not undermine the fairness of Steele's trial.

The district court enhanced Steele's sentence for each offense based on the bodily injury suffered by the victims.  Steele challenges the three level enhancement imposed under U.S.S.G. § 2A2.2(b)(3)(A) for two of the assaults on Ivory with a dangerous weapon (Counts 3r and 7r), and the two level enhancement imposed under U.S.S.G. § 2A2.4(b)(2) for assaulting a federal officer (Count 4r).  Both of these guideline sections incorporate the guideline definition of bodily injury at § 1B1.1 cmt. n. 1(b).

The district court heard all of the evidence at trial and adopted the findings made in the presentence investigation report (PSR) regarding the victims' injuries.  It found that Officer Wilkinson sustained scratches near his eyes as a result of the assault and sought medical attention.  A photograph of Wilkinson's face showing these scratches was received in evidence at the trial.  The district court also found that Ivory sustained a concussion during the incident on December 28, 2006 (Count 3r) during which Steele twice struck her in the face, choked her, and kicked her while she was

lying on the ground. Finally, the district court found that Ivory suffered a swollen face and a swollen and bleeding lip as a result of the assault during which Steele threatened her with a knife on October 1, 2005 (Count 7r). The district court found that each of these injuries was significant and justified a two or three level enhancement. We review these factual findings for clear error. United States v. Aguilar, 512 F.3d 485, 487 (8th Cir. 2008).

Steele objected to these findings in the PSR and makes essentially the same arguments on appeal. He contends that the injuries Ivory sustained did not result from the objects which served as the dangerous weapons. In determining whether the § 2A2.2(b)(3)(A) bodily injury enhancement applies, the court can consider relevant conduct in addition to the conduct that actually formed the basis of the charge. In United States v. LeCompte we looked at "the whole, nearly continuous assaultive behavior of the appellant upon the victim" and did not require the district court "to assign the use of a specific dangerous weapon to a particular resulting injury." 108 F.3d at 951. Steele also argues that the injury Officer Wilkinson suffered was too insignificant to qualify as a bodily injury. The scratches and eye pain experienced by Officer Wilkinson were significant injuries in that they were painful and obvious. We conclude that the district court did not err in finding that these injuries warranted enhancements of Steele's sentence.

For these reasons we affirm the judgment of the district court.

_____