UNITED STATES of America,
Plaintiff–Appellee

v.

Christon Colson CALLAHAN,
Defendant–Appellant.

No. 13–3467.

United States Court of Appeals,
Eighth Circuit.

Submitted: March 13, 2015.

Filed: July 13, 2015.

Jennifer Marie Macaulay, argued, Saint Paul, MN, for appellant.

Andrew Dunne, AUSA, argued, Minneapolis, MN, for appellee.

Before WOLLMAN and COLLOTON, Circuit Judges, and WHITE,[1] District Judge.

WOLLMAN, Circuit Judge.

Christon Colson Callahan appeals the term of imprisonment imposed upon him, arguing that the district court[2] should have provisionally sentenced him to commitment to a secure medical facility and that the Bureau of Prisons (BOP) should have credited toward his current sentence the days he spent in pretrial custody. We affirm.

In early 2011, Callahan was living at a halfway house and completing a federal sentence for bank robbery. On February 26, 2011, Callahan removed his GPS ankle bracelet and absconded from the halfway house. Two days later, he helped his former cellmate rob a bank. Callahan was charged with one count of aiding and abetting bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2, and one count of escape from custody, in violation of 18 U.S.C. §§ 751(a) and 4082(a). The district court found Callahan competent to stand trial. Callahan eventually pleaded guilty to both counts and thereafter requested a hearing to determine his present mental condition.

The procedure a district court must follow to determine whether to hospitalize a convicted person suffering from a mental disease or defect is set forth in 18 U.S.C. § 4244. Section 4244(a) requires the district court to hold a hearing on the defendant's present mental condition if the district court "is of the opinion that there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." If a hearing is required, the court may then "order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court." *Id.* § 4244(b). At the hearing, the defendant is entitled to counsel and is afforded an opportunity to testify, present evidence, subpoena witnesses, and confront and cross-examine witnesses. *Id.* §§ 4244(c), 4247(d). Thereafter, if the court determines that "the defendant is presently suffering from a mental disease or defect and that he should, in lieu of being sentenced to imprisonment, be committed to a suitable facility for care or treatment," the court must commit the defendant to the custody of the Attorney General for placement in a suitable facility under a provisional sentence of imprisonment. *Id.* § 4244(d).

---

1. The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri, sitting by designation.

2. The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

The district court granted Callahan's motion for a hearing to determine his present mental condition. Callahan retained licensed psychologist Seymour Gross, Ph. D., to complete a psychological examination and report. Dr. Gross diagnosed Callahan with dysthymic disorder; alcohol and synthetic marijuana abuse, both of which were in remission in a controlled setting; and personality disorder with borderline and antisocial features. Dr. Gross opined that Callahan's personality disorder would best be addressed through dialectical behavior therapy, which "is not a brief process and involves individual and group activities." Dr. Gross emphasized the importance of keeping Callahan safe and caring for his mental health but ultimately concluded that "[t]here is no clinical need for [Callahan] to be in a hospital institutional setting since he is not psychotic and does not demonstrate an acute or emergency crisis."

Psychologist Rushton Backer, Ph.D., evaluated Callahan on behalf of the BOP and issued a lengthy report. He likewise found that Callahan did not suffer from a mental disease or defect that would require hospitalization. Dr. Backer diagnosed Callahan with cocaine dependence, alcohol dependence, and cannabis abuse, all of which were in remission. He further diagnosed Callahan with borderline and antisocial personality disorders. His report explained that "[f]eatures of these disorders cause [Callahan] genuine distress and problems in most areas of his life, and account for many of the problems he reports experiencing during previous incarcerations." He recommended that Callahan be placed at the United States Penitentiary at Terre Haute, Indiana, where he could participate in a therapy program.

After the psychological examinations and reports were completed, the district court held a hearing and received the reports into evidence. Callahan testified that he was physically and sexually abused as a child. He explained that he suffers from serious chronic medical conditions and that he has been diagnosed with "bipolar, depression, personality disorder, [and] anti-social personality disorder." Callahan also testified regarding his previous incarceration at Terre Haute, explaining that he was not eligible to participate in therapy because he was not housed with the general population. According to Callahan, he previously was placed in protective custody for his safety.

Defense counsel argued that Callahan should receive the dialectical behavior therapy recommended by Dr. Gross and that without hospitalization, Callahan likely would be placed in protective custody where he would not receive any treatment at all. Counsel disagreed with the BOP's recommendation that Callahan be imprisoned at Terre Haute, noting that "Dr. Backer recommends he be sent right back to the same institution that he was in, and where he spent day after day after day in solitary confinement or with one other person in protective custody."

The district court inquired whether Callahan's personality disorder constituted a mental disease or defect. It asked about the treatment recommended by Dr. Gross and whether it was available to individuals who were provisionally sentenced to hospitalization. Before taking the matter under advisement, the district court remarked that neither expert recommended that Callahan be hospitalized. Defense counsel responded that although Dr. Gross did not recommend hospitalization, commitment to a suitable facility would be the only way Callahan might receive dialectical behavior therapy. Counsel argued, "I would submit that if he goes to the BOP, what he'll get is medication. Dr. Gross'[s] report clearly

says he needs medication and this treatment. To get that treatment, I think he needs to go to a suitable facility."

At sentencing, the district court denied Callahan's request to be hospitalized. Although the district court should have made its determination under 18 U.S.C. § 4244(d), it instead cited 18 U.S.C. § 4245(d) and stated the standard set forth therein:

> The required finding under 4244 is that there be a finding by a preponderance of the evidence, and this is actually in 4245. I'm looking at D. That the person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care and treatment in a suitable facility. If that finding is made, the person is to be committed to the custody of the attorney general, who will then hospitalize the person for treatment in a suitable facility.

> It is the judgment of the Court that this defendant is—would benefit from treatment, but is not suffering from the sort or level of mental disease or defect contemplated in the statute such that he needs to be in a locked hospital setting. So the 4244 motion is denied.

Callahan did not object or otherwise complain that the district court applied the wrong standard.

The district court then imposed a sentence of 151 months' imprisonment for aiding and abetting bank robbery and a concurrent sentence of 60 months' imprisonment for escape. Thereafter, the BOP calculated Callahan's release date, first applying the days he spent in pretrial detention to satisfy the sentence he was serving when he committed the instant offenses and then applying the remaining days toward the sentence imposed in this case.

Callahan now argues that the district court applied the wrong standard to determine whether to impose a provisional sentence of commitment to a suitable facility for care or treatment. Because Callahan did not raise this argument during the district court proceedings, we review for plain error. *See* Fed.R.Crim.P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). For reversal, Callahan must show that the district court committed an error that is plain, that the error affected his substantial rights, and that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

The district court erred when it quoted and apparently applied 18 U.S.C. § 4245(d). Section 4245 is entitled "Hospitalization of an imprisoned person suffering from mental disease or defect" and applies to individuals who are serving a sentence of imprisonment. When the district court made its determination, Callahan had pleaded guilty but had not yet been sentenced. Accordingly, the district court should have followed the procedure set forth in § 4244, "Hospitalization of a convicted person suffering from mental disease or defect." The error in applying § 4245(d) was plain because the determination clearly or obviously should have been made under § 4244(d). *See Olano*, 507 U.S. at 734, 113 S.Ct. 1770 ("'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'"). Indeed, before denying Callahan's request to be hospitalized at the sentencing hearing, the parties and the district court had followed and complied fully with the requirements of § 4244(a)-(c).

Callahan has not satisfied the next step in the plain error analysis, however,

because he has not shown that the plain error affected his substantial rights. To affect substantial rights, the error must have been prejudicial—i.e., "[i]t must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734, 113 S.Ct. 1770. To order the hospitalization of a convicted person under § 4244(d), the district court must find "that the defendant is presently suffering from a mental disease or defect and that he should, in lieu of being sentenced to imprisonment, be committed to a suitable facility for care or treatment." Similarly, to order the hospitalization of an imprisoned person under § 4245(d), the district court must find "that the person is presently suffering from a mental disease or defect for the treatment of which he is need of custody for care or treatment in a suitable facility." We recognize that § 4244(d) employs somewhat different language than § 4245(d), but we decline to decide whether and, if so, precisely how the standards differ. As set forth more fully below, it is clear that the district court's disposition would have been the same under either statute.

■ Only defense counsel and Callahan himself advocated for hospitalization; the experts agreed that Callahan did not need to be hospitalized. The district court asked several questions during the § 4244 hearing in an effort to clarify the nature of Callahan's argument, particularly in light of both experts' opinions that "he's not in need of 4244 disposition, but is in need of some sensitive care and handling in the prison institution." At the close of the § 4244 hearing, the district court reiterated its view of the evidence, saying, "[T]here's no evidence in the record that would—that supports an actual 4244 hospitalization." Callahan has not pointed to anything that indicates that this was a close case for the district court. "It is the

defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Olano*, 507 U.S. at 734, 113 S.Ct. 1770. Because Callahan has not demonstrated that the district court's plain error affected the outcome of the proceedings, he is not entitled to relief.

■ Callahan next argues that his sentence was unreasonable because the district court failed to consider the need to provide Callahan with medical care. *See* 18 U.S.C. § 3553(a)(2)(D). The district court reviewed the competency reports and the psychological reports, heard Callahan's testimony regarding his physical and mental illnesses, and considered the presentence investigation report, which included information on Callahan's physical condition and mental and emotional health. The district court thus adequately considered the need to provide Callahan with medical care when it imposed Callahan's sentence.

Finally, Callahan argues that the BOP should have given him credit toward his current sentence for all days he spent in pretrial detention. We will not decide this issue, however, because Callahan has not properly exhausted his administrative remedies. *See United States v. Tindall*, 455 F.3d 885, 888 (8th Cir.2006) ("Prisoners are entitled to administrative review of the computation of their credits, 28 C.F.R. §§ 542.10–542.16, and after properly exhausting these administrative remedies, an inmate may seek judicial review through filing a habeas corpus petition under 28 U.S.C. § 2241.").

The sentence is affirmed.