# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-4291

_____

United States of America

*Plaintiff - Appellee*

v.

Charles Allen Roark, also known as Chuck Roark, also known as Chuckie Roark

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: November 16, 2017
Filed: February 9, 2018
[Unpublished]

_____

Before COLLOTON and GRUENDER, Circuit Judges, and READE,[1] District
Judge.

_____

PER CURIAM.

Charles Allen Roark appeals his conviction for being a felon in possession of
a firearm. *See* 18 U.S.C. § 922(g)(1). At his trial, officers from the Jefferson City

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern
District of Iowa, sitting by designation.

Police Department testified that after observing Roark selling what appeared to be drugs, they initiated a traffic stop. Roark then fled on foot, and the officers followed. After the officers apprehended him, they found a gun on the ground in the path of Roark's flight. Based on this testimony and videos of the arrest, a jury found Roark guilty, and the district court[2] sentenced him to 120 months' imprisonment. Roark challenges the conviction on five grounds.

Roark first argues that the district court erred in denying his motion to suppress the evidence recovered after the traffic stop. Roark argued that the officers lacked reasonable suspicion to stop his vehicle. For this claim, we review the "district court's factual findings for clear error and its legal conclusions de novo." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016). At the suppression hearing, Sergeant Joseph Matherne testified that while conducting surveillance of a parking lot with reported drug activity, he observed a man approach Roark, engage in a short conversation with him, and then give him money in exchange for an unknown item. Based on Sergeant Matherne's twenty-seven years' experience, he believed that a drug transaction had taken place—a factual conclusion that the district court, adopting the magistrate judge's opinion, found reasonable. After Roark drove away from the parking lot, Sergeant Matherne relayed his observations to Officers Jarrod Phelps and Joshua Hagemeyer and informed them that they could stop Roark's car. We have found in similar circumstances that the observation of an "apparent drug deal" provided reasonable suspicion to stop a car. *See, e.g.*, *United States v. Bustos-Torres*, 396 F.3d 935, 942-43 (8th Cir. 2005); *see also United States v. Chhunn*, 11 F.3d 107, 110 (8th Cir. 1993) (describing the collective knowledge

[2]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri, adopting the report and recommendations of the Honorable Matt J. Whitworth, Chief Magistrate Judge, United States District Court for the Western District of Missouri, with respect to the motion to suppress.

doctrine).  On this basis, we conclude that the officers had reasonable suspicion to stop Roark's vehicle and affirm the district court's denial of the motion to suppress.[3]

Roark next argues that the evidence at trial was insufficient to establish his knowing possession of a gun.  We review "the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict."  *United States v. Santana*, 524 F.3d 851, 853 (8th Cir. 2008).  The evidence here sufficiently supported the verdict.  Officer Hagemeyer testified that during the foot pursuit, he observed Roark retrieve an object from his rear waistband, and believing this object to be a handgun, Officer Hagemeyer stopped and drew his gun before continuing.  After Roark was apprehended, a different officer—Officer Collier Nichols—retraced Roark's path and found a handgun lying on the ground.  The gun did not appear rusted or weathered, so Officer Nichols believed that it had been there for only a short time.  This evidence established more than Roark's mere proximity to the weapon, *see United States v. Griffith*, 786 F.3d 1098, 1103 (8th Cir. 2015), and is sufficient for the jury to conclude that he knowingly possessed the gun, *see United States v. Garrett,* 648 F.3d 618, 622-23 (8th Cir. 2011).

Roark's third and fourth arguments relate to the Government's Exhibit 3—a dash-cam video depicting the traffic stop and Roark's flight from his car.  Roark's arguments focus on two different segments of the video.  He claims that the district court erred in (1) accelerating one segment of the video to "double-time" speed during the cross-examination of Officer Phelps at trial, and (2) slowing down a different segment of the video (sometimes to individual frames) after the jury had

---

[3]The parties also briefed whether Roark's expired license plate on the rental car that he was driving provided reasonable suspicion for the stop.  Because the apparent drug transaction provides an independent basis for finding reasonable suspicion, we need not address this issue. *See United States v. Walker*, 555 F.3d 716, 721 n.3 (8th Cir. 2009).

asked to re-watch it during deliberations.[4]  Because Roark failed to object in both instances, we review the claims for plain error.  *See United States v. Hunter*, 862 F.3d 725, 728 (8th Cir. 2017).  To establish plain error, Roark must show, among other things, that the error affected the outcome of the proceedings.  *See United States v. Callahan*, 800 F.3d 422, 425-26 (8th Cir. 2015).

Roark has failed to satisfy this burden.  Even assuming that the district court erred in changing the speed of the video, nothing suggests that the change affected the outcome of the trial.  *See id.*  For the accelerated segment of the video, Roark's attorney still engaged in effective cross-examination despite the video's speed.  For the decelerated segment, Roark contends that the district court's slowing of the segment amounted to improper judicial intrusion in the jury deliberations.  But the jury members themselves asked that the video be slowed, and the jury also watched the segment at full speed.  Testimony about the apparent drug transaction, police chase, and recovered weapon also independently supported the conviction.  In short, Roark has offered no persuasive explanation for why the speed of the video prejudiced him, so we find no plain error with respect to Roark's third and fourth contentions.  *See id.*; *see also United States v. Jones*, 795 F.3d 791, 799-800 (8th Cir. 2015) (finding no prejudice from the jury's viewing of video evidence during deliberations).

Roark's final argument is that the district court abused its discretion in refusing his request to show a different video—Roark's Exhibit C[5]—to the jury during its

---

[4]In his reply brief, Roark argues for the first time that the accelerated showing of a different video—his Exhibit C—warrants reversal.  Because Roark raises this issue for the first time in his reply brief, we will not address it.  *See United States v. Brown*, 108 F.3d 863, 867 (8th Cir. 1997).

[5]Exhibit C depicts Roark's arrest.  According to Roark, the video tends to show that a black item, visible on Roark's waist in Exhibit 3, is his belt and not a gun.

deliberations. *See United States v. Placensia*, 352 F.3d 1157, 1165 (8th Cir. 2003) (noting the abuse of discretion standard of review). The district court did show the jury the Government's Exhibit 3 during its deliberations, and Roark argues that Exhibit C was therefore required to be shown for context. But the jury asked to watch Exhibit 3 again; it did not ask to watch Exhibit C again. The jury had previously viewed Exhibit 3 during the Government's case-in-chief and Exhibit C during Roark's case-in-chief. Requiring an additional, unsolicited viewing of Exhibit C during deliberations might have confused the jury, *see United States v. Carr*, 67 F.3d 171, 175 (8th Cir. 1995), and Roark points to no case supporting his contention that the district court needed to show Exhibit C for context. We therefore find no abuse of discretion. *See Placensia*, 352 F.3d at 1165.

For the foregoing reasons, we affirm.

_____