# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-1142

_____

United States of America

*Plaintiff - Appellee*

v.

Mario Martell Spencer

*Defendant - Appellant*

_____

No. 20-1190

_____

United States of America

*Plaintiff - Appellee*

v.

Ahmed Osman Farah

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 17, 2021
Filed: May 25, 2021

_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury convicted Mario Martell Spencer and Ahmed Osman Farah of Hobbs Act robbery, *see* 18 U.S.C. § 1951(a), and brandishing a firearm during and in relation to a crime of violence, *see id.* § 924(c)(1)(A)(ii). The district court[1] sentenced Spencer to 156 months' imprisonment and Farah to 120 months' imprisonment. Spencer and Farah appeal, arguing that the jury instructions were erroneous, that the Government engaged in prosecutorial misconduct during its closing argument, and that the district court miscalculated their advisory sentencing guidelines ranges. We affirm.

**I.**

On March 23, 2018, Spencer sent a friend a text message asking to use her car. The friend hesitated because Spencer did not have a driver's license. But she agreed after Spencer assured her that he had a licensed driver with him. The friend testified that Spencer and a male companion stopped by her workplace, a Dollar General store, to pick up the keys early that evening. Security-camera footage at the Dollar General store corroborated her testimony.

Later that night, around 8:26 p.m., two masked men entered the Penn-Wood Market, a convenience store that sold goods that had moved through interstate commerce. Khalid Bari and Ali Mohamed were staffing the cash registers at the time. The masked men demanded "all the . . . money" in the store, and one of them pointed a firearm at Bari. The masked men emptied the cash registers into a black plastic bag and exited the store. The store's security cameras recorded the encounter.

_____

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

-2-

At 8:30 p.m., police officers less than two miles away responded to a 911 call reporting an ongoing robbery at the Penn-Wood Market. Dispatch informed them that the robbers were driving a gray Nissan. As the officers approached the Penn-Wood Market, they observed a gray Nissan pass them traveling in the opposite direction. The officers turned around and activated their emergency lights. The Nissan fled the wrong way down a one-way street, struck two vehicles, and nearly hit a passerby. After briefly losing sight of their quarry, the officers spotted the Nissan, which had crashed into a garage and was unoccupied. Almost immediately, another responding officer about a block away encountered two males running away from the crash site. The officer gave chase and caught one of them; this man was Farah. A short while later, officers spied a man on the roof of a garage who matched the description of the other fugitive; this man was Spencer. The officers arrested both men.

Near the place where they arrested Farah, the officers found a ripped black plastic bag with loose cash. Later, they obtained a warrant to search the Nissan, confirmed that it belonged to Spencer's friend, found a wallet with Farah's driver's license in the compartment of the driver-side door, and found Spencer's phone on the passenger-side floor.

Spencer and Farah were charged with and pleaded not guilty to Hobbs Act robbery, *see* 18 U.S.C. § 1951(a), and brandishing a firearm during and in relation to a crime of violence, *see id.* § 924(c)(1)(A)(ii). Prior to trial, Spencer made two calls from jail to the friend who had lent him her car, warning her not to "tell on [him]" and encouraging her to "do some legal research on . . . pleading the Fifth."

Before trial, the defendants and the Government jointly proposed a jury instruction explaining the elements of Hobbs Act robbery. At trial, however, the defendants changed their minds and objected to the instruction on the ground that it did not make clear that Hobbs Act robbery requires a *mens rea* of knowledge with respect to the taking of the victim's property. When the district court declined to

give the defendants' proposed instruction, counsel for Spencer suggested in the alternative that the district court add an explicit *mens rea* term to the original instruction. The district court asked if adding the word "knowingly" "would address the issue." Counsel for each defendant confirmed that it would. Accordingly, the district court issued the original instruction with the word "knowingly" added.

During closing argument, the Government repeatedly asserted that the evidence against the defendants was overwhelming. Although the defendants did not object to any of these assertions at trial, they argue on appeal that at least one was an expression of the prosecutor's personal opinion about what verdict the jury should reach. In response to the argument made by counsel for Farah that the Government doubted its own case, the Government responded in rebuttal that it had "yet to meet twelve jurors that [sic] can disregard an overwhelming amount of evidence."

In addition, the Government made a remark that the defendants argue on appeal implied knowledge of facts outside the record. The defense had suggested during its closing argument that the Government's failure to call Mohamed as a witness left open the possibility that Mohamed was the defendants' accomplice and thus the defendants did not take the money from the victim against his will by threat or force, as Hobbs Act robbery requires. *See* 18 U.S.C. § 1951(b)(1). In rebuttal, the Government stated: "[T]here are many reasons why we might only call one witness and not the other. . . . Maybe Mr. Mohamed wasn't able to be obtained. Maybe Mr. Mohamed is dead. Nobody knows." Again, the defendants did not object.

Finally, the Government made a few remarks that the defendants argue on appeal vouched for the credibility of witnesses or implied that all relevant evidence was before the jury, even though Mohamed had not testified. In response to the claim made by counsel for Spencer that law enforcement had "rush[ed] to judgment," the Government stated that "the cops did a bang-up job" and "collected

-4-

all the evidence." The Government also assured the jurors, "You're not missing anything." The defendants did not object to these statements.

The jury convicted Spencer and Farah on both counts. At sentencing, the district court applied a two-level increase to Spencer's offense level for obstruction of justice, *see* U.S.S.G. § 3C1.1, and a two-level increase to Farah's offense level for reckless endangerment during flight, *see* U.S.S.G. § 3C1.2.

Spencer and Farah appeal. First, they argue that the district court abused its discretion by failing to instruct the jury that Hobbs Act robbery requires an effect on interstate commerce. Next, they contend that the Government's statements during closing argument constituted prosecutorial misconduct. Finally, Spencer argues that the district court erred in increasing his offense level under § 3C1.1, and Farah argues that the district court erred in increasing his offense level under § 3C1.2.

**II.**

First, Spencer and Farah argue that the district court abused its discretion by failing to instruct the jury that Hobbs Act robbery requires an effect on interstate commerce. Typically, we review challenges to jury instructions for an abuse of discretion. *United States v. Poitra*, 648 F.3d 884, 887 (8th Cir. 2011). But if the party challenging the instruction forfeited the objection by failing timely to raise it before the district court, then we review it for plain error. *United States v. Fast Horse*, 747 F.3d 1040, 1041-42 (8th Cir. 2014). And if the party waived the objection by expressly agreeing to the instruction, then we do not review the objection at all. *See United States v. Davis*, 826 F.3d 1078, 1082 (8th Cir. 2016); *United States v. Evenson*, 864 F.3d 981, 983 (8th Cir. 2017).

We agree with the Government that the defendants forfeited their objection.[2] A party forfeits the right to object to a jury instruction on any ground that the party did not assert with specificity before the district court. Fed. R. Crim. P. 30(d). Here, the only ground for objecting to the original instruction that the defendants asserted with specificity before the district court was that the instruction failed to make clear that Hobbs Act robbery requires a *mens rea* of knowledge with respect to the taking of the victim's property. Therefore, the defendants forfeited the right to object to the instruction on other grounds, including the ground that the instruction failed to make clear that Hobbs Act robbery requires an effect on interstate commerce.

The defendants make two arguments in reply, neither of which is sound. First, Farah maintains that he and Spencer preserved their objection by proposing an alternative instruction that made clear that Hobbs Act robbery requires an effect on interstate commerce. *See* Fed. R. Crim. P. 51(b) ("A party may preserve a claim of error by informing the court . . . of the action the party wishes the court to take . . . ."). The district court's instruction stated that Hobbs Act robbery requires an effect on "interstate commerce" but, when explaining what constitutes an effect on interstate commerce, referred simply to "commerce" without repeating the adjective "interstate." The defendants' proposed instruction dropped the adjective "interstate" altogether. Why Farah believes that dropping the adjective "interstate" altogether would have clarified that Hobbs Act robbery requires an effect on interstate commerce is a mystery. Regardless, even if the defendants' proposed instruction had been clearer than the district court's, the "mere tender of an alternative instruction" that avoids an alleged error in the district court's instruction "does not preserve the error for appeal" unless the party specifies the alleged error as a basis for objecting to the district court's instruction. *United States v. Weckman*, 982 F.3d 1167, 1175 (8th Cir. 2020). Here, it was not until this appeal that the defendants argued that the district court's instruction failed to make clear that Hobbs Act

---

[2]The Government argues in the alternative that the defendants waived their objection and that, in any event, the jury instruction did not constitute an abuse of discretion. We do not reach these arguments because we conclude that the defendants forfeited their objection and their claim fails under plain-error review.

robbery requires an effect on interstate commerce. Therefore, the defendants forfeited their objection even assuming their proposed instruction made clear that Hobbs Act robbery requires an effect on interstate commerce.

Second, the defendants argue that they preserved their objection by stating that their proposed instruction was "most consistent with the elements of the charged crime" and was "approved . . . in this Circuit." To the extent that this statement constitutes an objection to the district court's instruction, it is too general "to bring into focus the precise nature of the alleged error" that the defendants complain about on appeal. *See United States v. Steele*, 550 F.3d 693, 703 (8th Cir. 2008) (holding that the defendant's description of an instruction as "inconsistent with congressional purpose" was too general to bring into focus the objection that he raised on appeal). Consequently, the statement is too general to rescue the defendants' objection from forfeiture. *See id.*

Having concluded that the defendants forfeited their objection, we proceed to review it for plain error. "To obtain relief under a plain-error standard of review, the party seeking relief must show that there was an error that is clear or obvious under current law, that affected the party's substantial rights, and that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Ruzicka*, 988 F.3d 997, 1008 (8th Cir. 2021) (internal quotation marks omitted). To show that an error affected his substantial rights, a party must show a reasonable probability that the outcome of the proceeding would have been different but for the error. *See Molina-Martinez v. United States*, 578 U.S. ---, 136 S. Ct. 1338, 1343 (2016); *United States v. Callahan*, 800 F.3d 422, 425-26 (8th Cir. 2015).

Spencer and Farah fail to show a reasonable probability that the outcome of the trial would have been different had the district court made perfectly clear that Hobbs Act robbery requires an effect on interstate commerce. A robbery from an establishment that "deal[s] in goods that move through interstate commerce" is a robbery that affects interstate commerce for purposes of the Hobbs Act. *United*

*States v. Dobbs*, 449 F.3d 904, 912 (8th Cir. 2006).[3] Here, the Government presented unrebutted evidence that the Penn-Wood Market dealt in goods, including tobacco, groceries, and candy, that had moved through interstate commerce. Even assuming the district court's instruction failed to communicate that Hobbs Act robbery requires an effect on interstate commerce, there is no reasonable probability that the jury would not have found the defendants guilty of Hobbs Act robbery had the district court issued a clearer instruction. Therefore, the defendants' challenge to the district court's jury instruction regarding Hobbs Act robbery fails under plain-error review.

### III.

Next, Spencer and Farah argue that the Government engaged in prosecutorial misconduct during closing argument. A prosecutor's conduct or remarks warrant a new trial if (1) the "conduct or remarks were improper," and (2) the "conduct or remarks prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial." *United States v. Alaboudi*, 786 F.3d 1136, 1141 (8th Cir. 2015). Typically, we review the denial of a motion for a new trial due to prosecutorial misconduct for an abuse of discretion. *See id.* But if the defendant failed to object to the alleged misconduct at trial, then we review the failure to grant a new trial for plain error. *United States v. Ralston*, 973 F.3d 896, 908 (8th Cir. 2020). Here, the defendants concede that, because they did not object at trial, we are to review the district court's failure *sua sponte* to grant a new trial for plain error.

Again, the defendants fail to show a reasonable probability that the outcome of the trial would have been different had the district court not permitted the

---

[3]Spencer requests that we reconsider our holding in *Dobbs*. As he recognizes, however, "departing from this Court's precedents would require a decision by the Eighth Circuit *en banc* or the United States Supreme Court." For this reason, we must decline his request. *See United States v. Moore*, 572 F.3d 489, 491 (8th Cir. 2009) (per curiam) (explaining that a panel cannot overrule the holding of a prior panel).

allegedly improper argument. They emphasize that their theory of the case was that they did not take the money from Mohamed against his will by threat or force because Mohamed was their accomplice. The defendants argue that there is a reasonable probability that the jury would have accepted their theory—even though they presented no evidence for it—had the Government not vouched for the evidence and implied that Mohamed did not testify because he was dead or missing. Even assuming this is true, however, the other employee at the Penn-Wood Market, Bari, testified that the defendants held him at gunpoint while they emptied the cash registers, including the cash register that he was staffing, causing him to fear for his life. And the Government introduced evidence from the store's security cameras to corroborate Bari's testimony. Therefore, even assuming Mohamed was the defendants' accomplice, the evidence was overwhelming that the defendants took the money from Bari against Bari's will by threat or force. Accordingly, there is no reasonable probability that the jury would not have found the defendants guilty of Hobbs Act robbery but for the Government's allegedly improper closing argument.

We conclude that the defendants' prosecutorial-misconduct claim fails under plain-error review. Because we rest this conclusion on the fact that the defendants fail to establish a reasonable probability that the allegedly improper argument affected the outcome of the trial, *see Callahan*, 800 F.3d at 425-26, we do not reach the question whether the argument was improper.

## IV.

Finally, each of the defendants claims that the district court procedurally erred in calculating his advisory sentencing guidelines range. When considering claims of procedural error, we review the district court's factual findings for clear error and its interpretation of the guidelines *de novo*. *United States v. Zech*, 553 F.3d 663, 666 (8th Cir. 2009) (per curiam). Subject to an exception not applicable here, "U.S.S.G. § 6A1.3 requires sentencing courts to apply Guidelines enhancements that are proven by a preponderance of the evidence." *United States v. Okai*, 454 F.3d 848, 852 (8th Cir. 2006).

## A.

Spencer argues that the district court procedurally erred in increasing his offense level for obstruction of justice under U.S.S.G § 3C1.1. Section 3C1.1 requires a two-level increase to the defendant's offense level if the defendant "attempted to obstruct or impede" the investigation or prosecution of the charges against him and "the obstructive conduct related to . . . the defendant's offense of conviction." The district court concluded that this "enhancement applies when a defendant . . . advises a witness to stay silent for the defendant's benefit by concealing the defendant's . . . illegal activity" and found by a preponderance of the evidence that Spencer's purpose in urging his friend to consider "pleading the Fifth" was to conceal his illegal activity.

Spencer makes two objections to the district court's reasoning, neither of which is sound. First, Spencer argues that the district court erred in holding that encouraging someone to exercise her constitutional rights can constitute obstruction of justice if the individual's purpose in providing the encouragement is to conceal his illegal activity. Circuit precedent forecloses this argument. In *United States v. McMannus*, we reversed the district court, which, "citing the Fifth Amendment, [had] held that the [§ 3C1.1] enhancement should not apply where a mother simply advises her daughter to remain silent about criminal activity." 496 F.3d 846, 850 (8th Cir. 2007), *overruled on other grounds by Pepper v. United States*, 562 U.S. 476 (2011). We explained that what the mother gave her daughter was "not advice . . . to keep silent to protect [the daughter], but instructions . . . to conceal [the mother's] involvement in . . . illegal activity." *Id.* We held that such conduct "certainly qualifies as an attempt to obstruct or impede the administration of justice." *Id.* (alterations omitted).

Second, Spencer argues that the district court clearly erred in finding by a preponderance of the evidence that his purpose in urging his friend to consider "pleading the Fifth" was to conceal his illegal activity. We disagree. In finding that

Spencer's purpose in urging his friend to consider "pleading the Fifth" was to conceal his illegal activity, the district court noted Spencer's repeated warnings to his friend not to "tell on" him, which it interpreted as warnings not to tell law enforcement about his role in the robbery. Spencer disputes this interpretation. According to Spencer, he issued the warnings because he "was simultaneously seeing [the friend] and another woman and did not want the other woman to know he was talking to [the friend]." However, given that much of the conversation focused on the criminal investigation, the pending trial, and how much prison time Spencer was likely to serve, the district court's interpretation of the warnings is at least as plausible as Spencer's. Therefore, the district court did not clearly err in finding by a preponderance of the evidence that Spencer's purpose in urging his friend to consider "pleading the Fifth" was to conceal his illegal activity. *See United States v. Smith*, 49 F.3d 362, 367 (8th Cir. 1995) (holding that the district court's interpretation of the evidence was not clearly erroneous even though "different interpretations of the [evidence were] possible").

B.

Farah raises his own claim of procedural error, arguing that the district court improperly increased his offense level for reckless endangerment during flight under U.S.S.G. § 3C1.2. Section 3C1.2 requires a two-level increase to the defendant's offense level if the defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." The district court concluded that the driver of the Nissan engaged in conduct that met this standard and found by a preponderance of the evidence that Farah was the driver of the Nissan.

Farah does not contest the district court's conclusion that the driver of the Nissan "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." *See* § 3C1.2. Nor could he, given that the Nissan drove the wrong way down a one-way street, struck two vehicles, almost struck a passerby, and crashed into a garage. *See,*

*e.g.*, *United States v. Pierce*, 388 F.3d 1136, 1138 (8th Cir. 2004) (per curiam) (affirming the imposition of a § 3C1.2 increase because the defendant struck multiple cars in an attempt to escape). Instead, Farah maintains that the district court clearly erred in finding by a preponderance of the evidence that he was the driver.

Farah is mistaken. The evidence warranted a practical certainty that either Farah or Spencer drove the Nissan. Thus, if Farah was not the driver, then Spencer was the driver. And the evidence that Farah was the driver was stronger than the evidence that Spencer was the driver. While Farah has not pointed to any evidence suggesting that Spencer was the driver, the Government pointed to three pieces of evidence suggesting that Farah was the driver. First, the police found a wallet with Farah's driver's license in the compartment of the driver-side door and Spencer's phone on the passenger-side floor. Second, Farah was a licensed driver while Spencer was not, and Spencer's friend had agreed to lend him her car only because a licensed driver was accompanying him. Third, Farah had an arrest record featuring allegations of flight from law enforcement while Spencer did not. Even setting aside the third piece of evidence, which Farah argues it was inappropriate for the district court to consider, *but see United States v. Never Misses A Shot*, 715 F.3d 1048, 1051-52 (8th Cir. 2013) (approving the sentencing court's reliance in part on arrest records to demonstrate propensity), the first two pieces of evidence suggest that Farah rather than Spencer drove the Nissan. In the absence of countervailing evidence, this makes it more likely that Farah was the driver than that Spencer was the driver. Therefore, the district court did not clearly err in finding that Farah was driving when the defendants fled from law enforcement.

## V.

For the foregoing reasons, we affirm.

_____