# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 00-1694

———————

United States of America,

      Appellee,

v.

Jose J. Nunez,

      Appellant.

Appeal from the United States
District Court for the
District of Nebraska

———————

Submitted:  December 12, 2000

Filed:  July 13, 2001

———————

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and LAUGHREY,[1] District, Judge.

———————

McMILLIAN, Circuit Judge.

Jose Juan Nunez (defendant) appeals from a final judgment entered in the United States District Court[2] for the District of Nebraska upon a jury verdict finding him guilty of conspiracy to distribute methamphetamine, distribution of methamphetamine, and

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri, sitting by designation.

[2]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

possession with intent to distribute methamphetamine. The district court sentenced defendant to 210 months imprisonment, five years supervised release, and special assessments totaling $600.00. United States v. Nunez, No. 4:98CR3076 (D. Neb. Feb. 17, 2000) (judgment). For reversal, defendant argues that (1) the evidence was insufficient as a matter of law to support the jury's verdict and (2) the district court clearly erred in determining the drug quantity attributable to him at sentencing. For the reasons discussed below, we affirm the judgment of the district court.

Jurisdiction in the district court was proper based upon 18 U.S.C. § 3231. Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

**Background**

On August 18, 1998, defendant was indicted with codefendant David Zavala on one count of conspiracy to distribute methamphetamine, four counts of distribution of methamphetamine, and one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846. Defendant pled not guilty. Pursuant to a plea agreement with the government, Zavala pled guilty to possession with intent to distribute methamphetamine and was sentenced to 108 months imprisonment. Defendant's first trial took place in May 1999 and ended in a mistrial. His second trial took place in October 1999.

Briefly summarized, the government's evidence at trial showed the following. On July 10, 1998, an informant cooperating with local narcotics enforcement officers executed a controlled purchase of 6.05 grams of methamphetamine from Zavala at a car wash in Lincoln, Nebraska. On July 15, 1998, the informant introduced Zavala to an undercover officer, who purchased 28.10 grams of methamphetamine from Zavala on the same day. On July 30, 1998, the undercover officer made two more purchases from Zavala, totaling 27.72 grams of methamphetamine. On July 31, 1998, the undercover

officer purchased 55.35 grams of methamphetamine and arranged to purchase more methamphetamine from Zavala later that day.

Officers had been conducting surveillance of Zavala during July 30 and July 31, 1998. They observed him traveling back and forth between several locations within Lincoln, including an apartment at 1111 E Street, a house at 205 E Street, an apartment at 729 H Street, and the car wash where Zavala sold the methamphetamine to the undercover officer. After the two undercover purchases on July 30, 1998, officers observed Zavala go to the 1111 E Street apartment building, where some time later a blue extended cab pickup truck was seen arriving, staying for a short time, and then leaving. The same series of events occurred following the one completed undercover purchase on July 31, 1998.

Zavala was arrested on July 31, 1998, before the second arranged transaction was carried out. At the time of his arrest, Zavala had 55.85 grams of methamphetamine on him. Shortly after Zavala's arrest, officers obtained warrants to search the 1111 E Street apartment and the 205 E Street house.

At the 1111 E Street apartment, no methamphetamine was found. However, officers found payment bills related to the 205 E Street house in defendant's name, and they found receipts for wire transfers of money from defendant to an individual in Mexico. Subsequently, officers obtained records of the wire transfers, and those records indicated that defendant had sent a total of $4,000 to Mexico using his own name, and had sent an additional $4,000 using the names of individuals employed by the stores at which the transfers were made.

At the 205 E Street house, officers found, among other things, 454.53 grams of methamphetamine and an electronic scale. They also found a cable installation receipt bearing Zavala's name, and a phone bill and garbage payment book, each addressed to defendant. According to the owner of the 205 E Street house, defendant had rented the

house and was generally the person who paid the monthly rent, except for one period of time when Zavala or Roberto Nunez paid the rent because defendant apparently had gone back to Mexico. At the time of the search, the 205 E Street house was almost empty in terms of furniture, food, and other household items.

The government presented the testimony of an expert witness who explained that it is a common practice among drug dealers to store drugs in a "stash house," apart from the place of residence.

Officers obtained consent from Yvonne Arellano to search the apartment at 729 H Street. Arellano rented the apartment along with Zavala. During the search of the 729 H Street apartment, defendant arrived, driving the blue extended cab pickup truck which had been observed arriving at the 1111 E Street apartment building after Zavala's sales to the undercover officer on July 30 and July 31, 1998. Defendant was carrying, among other things, the keys to the blue pickup, keys to the 205 E Street house, and $3,907 in cash – of which $1,700 was the exact money (identified by pre-recorded serial numbers) given to Zavala by the undercover officer in the methamphetamine transactions on July 30 and July 31, 1998.

Defendant waived his <u>Miranda</u> rights and told one of the officers that he rented the 205 E Street house. He claimed that he had earned the $3,907 through roofing and lawn mowing work and that he carried it on him to avoid having it stolen. Almost a year later, on April 23, 1999, defendant made another voluntary statement in which he claimed that, on July 31, 1998, he had borrowed $2,000 cash from Zavala to buy a lawn mower, and that the rest of the $3,907 was going to be used to pay bills.

According to defendant's employment records from his roofing job, he stopped working in May 1998, after earning a total of $2,354.93 plus $649.05 received for mileage. Defendant's partner in the lawn care business testified that, for 1998, the

business had recorded a loss for tax purposes because most of the proceeds went into paying for equipment.

In addition, the government presented the testimony of Kelly McDonald, who identified defendant and Zavala as two men whom she had seen, on one occasion in early July 1998, selling methamphetamine to a friend of hers in a K-Mart parking lot.

Defendant testified at trial. According to defendant, he rented the 1111 E Street apartment with Zavala in May or June of 1997. Shortly thereafter, he rented the 205 E Street house in anticipation of his wife and children arriving from Mexico. After renting the house, he went to Mexico to get his family. He gave the key to the 205 E Street house to Zavala and Roberto Nunez and asked them to pay the rent and watch the house while he was away. It turned out that he was unable to bring his family to Lincoln, so he let an acquaintance named "Gusto" sublet the house while he continued to live in the 1111 E Street apartment with Zavala and Roberto Nunez. Defendant also testified that he earned up to $300 per month as a mechanic and over $300 per month selling belts, in addition to the money he earned doing roofing and lawn care work.

Defendant moved to dismiss the indictment at the end of the government's case-in-chief and at the close of the evidence. Each time the district court denied defendant's motion. The jury found defendant guilty on all six counts charged in the indictment.

After the presentence investigation report was prepared, defendant filed objections and requested an evidentiary hearing. The district court held an evidentiary hearing and found, among other things, that the 454.53 grams of methamphetamine found in the house at 205 E Street were attributable to defendant for purposes of calculating defendant's sentence. The district court sentenced defendant to 210 months imprisonment, five years supervised release, and special assessments totaling $600.00. Defendant timely appealed.

## Discussion

Defendant first argues that no reasonable jury could have found that he was guilty beyond a reasonable doubt of conspiracy to distribute methamphetamine. He contends that the government merely established Zavala as a drug dealer and further established that defendant was associated with Zavala. However, he argues, nothing in the evidence connected him with Zavala's drug activities or with the methamphetamine. In fact, he claims, the government's evidence of a conspiracy implicated Roberto Nunez, if anyone. Regarding defendant's connection with the house at 205 E Street, where the 454.53 grams of methamphetamine were found, defendant notes that his fingerprints were not found on any of the items seized. He also emphasizes his testimony that he was subletting the house to an acquaintance named "Gusto" at the time the methamphetamine was found there and that he had previously given keys to the house to Zavala and Roberto Nunez during a trip he took to visit his family in Mexico. As to the $1,700 cash that was found on defendant at the time of his arrest, and later identified as the money used by the undercover officer to purchase methamphetamine from Zavala, defendant highlights his testimony that he received that cash as part of a loan from Zavala to buy a lawn mower. Defendant sums up:

> Even when the evidence introduced at trial is viewed in the light most favorable to the Government, the evidence is insufficient to link [defendant] to the conspiracy charged in the Indictment. There is no evidence to establish that an agreement existed between [defendant] and Zavala or anyone else to distribute methamphetamine. Additionally, there is not sufficient evidence to link [defendant] to drugs found at 205 E Street.

Brief for Appellant at 12-13.

We review the sufficiency of the evidence *de novo*, examining the evidence in the light most favorable to the jury verdict and giving the verdict the benefit of all

reasonable inferences. We will reverse the jury's verdict only if we conclude that no reasonable jury could have found defendant guilty beyond a reasonable doubt. See United States v. Ortiz, 236 F.3d 420, 421 (8th Cir. 2001).

In the present case, we disagree with defendant's sufficiency-of-the-evidence argument. The government was not required to prove defendant's guilt by direct evidence; "a conviction may rest on indirect evidence." United States v. Jackson, 204 F.3d 812, 814 (8th Cir. 2000). While defendant was never actually seen with methamphetamine in his possession, his guilt could be established by circumstantial evidence reasonably supporting the inference that defendant and Zavala were engaged in a conspiracy to distribute methamphetamine. The government's theory was that the two men had an agreement whereby Zavala would carry out the actual sales of methamphetamine, and defendant would maintain the stash house (i.e., 205 E Street), collect the proceeds from Zavala, and wire the money to Mexico.

The law enforcement officers who conducted surveillance of Zavala on July 30 and July 31, 1998, testified that Zavala made stops at several locations apparently in connection with his sales of methamphetamine to the undercover officer. Those stops included the apartment at 1111 E Street (where Zavala and defendant resided), the house at 205 E Street, and the car wash where the undercover officer and Zavala consummated the transactions. On two occasions, surveillance officers observed a blue extended cab pickup truck arrive and briefly stay at the 1111 E Street apartment shortly after Zavala had completed a methamphetamine sale to the undercover officer and had returned to the apartment. At the time of defendant's arrest on July 31, 1998, he had been driving the blue extended cab pickup truck and he had on his person $1,700 of the purchase money used by the undercover officer to buy methamphetamine from Zavala. As to the evidence linking defendant to the methamphetamine found in the house at 205 E Street, the landlord testified that it was defendant who rented the house, regularly paid the rent, and even assisted the landlord with some repair work at the house. When defendant was arrested, he was carrying a key to the house on his person. When the

1111 E Street apartment was searched, law enforcement officers found bills for the 205 E Street house in defendant's name. Notwithstanding defendant's claim that an individual named "Gusto" was living in the house at the relevant time, the landlord testified that he knew of no one other than defendant using the house, and the defense produced no evidence to corroborate defendant's claim. As to defendant's possession of the $1,700 in proceeds from the July 30 and July 31 methamphetamine transactions, defendant claimed at the time of his arrest that he had earned the money from his roofing and lawn mowing jobs. It was not until many months later that defendant claimed to have received the cash as part of a larger loan from Zavala to buy a lawn mower. Finally, the evidence showed that defendant had wired a total of $8,000 to an individual in Mexico during 1998. He made some of those transfers using his own name and some using the names of employees of the stores at which the transfers were made. While defendant testified that he earned the money in his lawn care business and through other odd jobs, the evidence showed that he made only about $3,000 in his roofing job and the lawn care business operated at a loss in 1998.

All these pieces of circumstantial evidence, when put together, reasonably establish the inference that defendant and Zavala had an agreement and were involved in a conspiracy to distribute methamphetamine. Accordingly, we hold that the evidence was legally sufficient to support the jury's verdict.

Defendant next argues that the district court clearly erred in finding, for purposes of sentencing, that he was accountable for the 454.53 grams of methamphetamine found in the house at 205 E Street. Defendant emphasizes that no drugs were found on his person at the time of his arrest. He further highlights his own testimony that a man named "Gusto" had been living in the house under a sublease while defendant had, at all relevant times, been living in the apartment at 1111 E Street. Thus, defendant argues, there was no basis for the district court to conclude that he had either actual or constructive possession of the methamphetamine found in the house. See Brief for Appellant at 14-19.

We review a sentencing court's drug quantity determination for clear error. We will reverse only if, upon review of the entire record, we are left with a definite and firm conviction that a mistake has been made. See United States v. Moss, 138 F.3d 742, 745 (8th Cir. 1998). In the present case, we conclude that the district court had sufficient evidence before it to find defendant accountable for the 454.53 grams of methamphetamine stored in the house at 205 E Street. It was certainly reasonable for the district court to disbelieve defendant's claim that a man named "Gusto" was subleasing the house. Moreover, the district court could reasonably conclude, regardless of whether "Gusto" had been living in the house, that defendant had dominion and control over the house at all relevant times and was operating it as a stash house. Accordingly, we hold that the district court did not clearly err in determining the quantity of methamphetamine attributable to defendant at sentencing.

## Conclusion

For the reasons stated, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.