# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2368

_____

United States of America

*Plaintiff - Appellee*

v.

Robyn Renea Hamilton

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 17, 2016
Filed: September 14, 2016

_____

Before WOLLMAN, LOKEN, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

A superseding indictment charged Robyn Renea Hamilton and eight others with conspiracy to possess with intent to distribute more than 50 grams of actual methamphetamine "in the District of Nebraska and elsewhere" beginning in January 2002 and continuing until June 2014. Hamilton and one co-defendant went to trial in March 2015. After a five-day trial, the jury convicted Hamilton of the conspiracy

offense and acquitted her co-defendant.  The district court[1] sentenced her to the mandatory minimum of 120 months imprisonment followed by five years supervised release.  Hamilton appeals the conviction, arguing that the evidence was insufficient in two respects:  first, the government presented insufficient evidence that Hamilton knew of and knowingly participated in the alleged conspiracy; second, if there was sufficient evidence she was a member of some conspiracy, the government failed to prove she was a member of the single conspiracy alleged in the superseding indictment.  In reviewing these sufficiency claims, we view the evidence "in the light most favorable to the jury's verdict," reversing only if no reasonable jury could have found the defendant guilty of the charged offense.  United States v. Walker, 818 F.3d 416, 419 (8th Cir. 2016) (quotation omitted).  We affirm.

**A. Knowing Participation in a Conspiracy To Distribute Controlled Substances.**  To convict Hamilton of the charged offense, the government had the burden to prove beyond a reasonable doubt the three elements of a conspiracy offense: "(1) a conspiracy existed for an illegal purpose; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly joined in it."  United States v. Alama, 486 F.3d 1062, 1064 (8th Cir. 2007) (quotation omitted).  This required proof that Hamilton "knowingly contribute[d] to the furtherance of the conspiracy," which "requires some element of cooperation beyond mere knowledge of the existence of the conspiracy. . . . The government need not prove that the defendant knew all the conspirators or was aware of all the details."  United States v. Askew, 958 F.2d 806, 810 (8th Cir. 1992) (quotation omitted).

The government presented substantial evidence of a large conspiracy in which Eduardo Valenzuela, working for two men in Mexico, ran an illegal drug distribution network across the United States.  Members of the network and law enforcement

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

investigators testified at trial. Valenzuela testified that fifteen or sixteen people worked with him. Catalina Sanchez, Valenzuela's former girlfriend, explained the broad scope of the conspiracy.

There was also substantial evidence that Hamilton knowingly contributed to the furtherance of a drug distribution conspiracy. Javier Rodriguez-Compean ("Rodriguez"), a distributor, testified that Valenzuela supplied him methamphetamine starting in early 2012. His main customer was Kailee Davis, who told Rodriguez to bring drugs to Hamilton's residence, located on the Nebraska side of the South Dakota border. Rodriguez testified that Hamilton was present in her house or in the garage each of the five or six times he visited her residence to meet Davis. Davis introduced Hamilton to Rodriguez as "her friend, the owner of the house," and told Rodriguez that Hamilton "handled the money, kept the books and kept the drugs at her house." Hamilton would retrieve the money Davis paid Rodriguez in exchange for drugs.

Rodriguez testified that he delivered pounds of methamphetamine to Hamilton's house, discussed drug business with both women (using his brother or brother-in-law as an interpreter), and smoked methamphetamine with them. On one occasion, when Rodriguez delivered four pounds of methamphetamine to Davis, Valenzuela followed Rodriguez to Hamilton's residence, a trip corroborated by Sanchez. Hamilton was in the home, but did not come to the garage where the transaction took place. Rodriguez told Valenzuela that the house belonged to "India." When law enforcement searched Rodriguez's residence, they found a ledger that included the names "Wera," referring to Davis, and "Viejon," referring to Valenzuela. The ledger listed thousands of dollars of drug transactions.

Other conspirators testified to Hamilton's involvement. Oscar Hernandez met Davis at Hamilton's residence on multiple occasions, acting as interpreter when his brother-in-law, Rodriguez, went there to pick up money. Hernandez knew Hamilton as "La India" and understood that her house was Davis's safe house where she stored

cash and drugs. Rodriguez's brother, Gabriel Rodriguez, testified that he went to Hamilton's house multiple times to interpret for Rodriguez when he delivered drugs and picked up money. Gabriel testified that Hamilton and Davis counted out money together to give to Rodriguez, and that Hamilton was always there when he visited. He also testified to using methamphetamine with Hamilton.

Davis testified that she had been selling methamphetamine since approximately 2005. In December 2011, she needed someone to store large shipments of methamphetamine and help her keep track of the proceeds. She had known Hamilton for some time, trusted her, and knew of her methamphetamine habit. Davis asked her to help in exchange for "money and dope." Davis testified that Hamilton kept the money in a safe (for which Davis did not have the combination), kept the drugs in a toolbox, and maintained records -- later discarded -- of Davis's transactions with Rodriguez. After describing Hamilton as her "partner," Davis said on cross-examination that she "used" Hamilton. She also testified that Hamilton used some of the drug proceeds to pay rent.

Hamilton argues the government failed to prove she knowingly contributed to a drug conspiracy headed by Eduardo Valenzuela, noting that Rodriguez did not sell or deliver drugs to Hamilton, and the one time Valenzuela followed Rodriguez to Hamilton's house, she was not present when a drug transaction took place. Thus, Hamilton argues, the government only proved her presence at drug sales, and "a defendant's mere presence, coupled with the knowledge that someone else who is present intends to sell drugs, is insufficient to establish membership in a conspiracy." United States v. Ruiz-Zarate, 678 F.3d 683, 690 (8th Cir.) (quotation omitted), cert. denied, 133 S. Ct. 454 (2012).

As in Ruiz-Zarate, we conclude there was substantial evidence from which a reasonable jury could infer Hamilton's knowing participation in a conspiracy to distribute controlled substances. She allowed conspirator Davis to use Hamilton's

residence as a "stash house" for drugs and drug proceeds, was present at multiple drug transactions, kept records of the drug transactions, and was furnished some of the methamphetamine delivered to her home. This was sufficient evidence of knowing participation. See, e.g., United States v. Nunez, 257 F.3d 758, 763-64 (8th Cir. 2001); United States v. Tran, 16 F.3d 897, 904 (8th Cir. 1994). Although Hamilton's role was relatively minor, "a defendant may be convicted for even a minor role in a conspiracy, so long as the government proves beyond a reasonable doubt that he or she was a member of the conspiracy." United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir.) (en banc), cert. denied, 549 U.S. 898 (2006); see United States v. Miller, 698 F.3d 699, 703 (8th Cir. 2012), cert. denied, 133 S. Ct. 1296 (2013). Here, the evidence was sufficient to prove far more than a mere user-supplier relationship between Davis and Hamilton. See, e.g., United States v. Adams, 401 F.3d 886, 897-98 (8th Cir.), cert. denied, 546 U.S. 966 (2005).

**B. Participation in the Charged Conspiracy.** Hamilton argues alternatively that, if there was sufficient evidence she knowingly participated in a conspiracy to distribute controlled substances, it was only a smaller, separate conspiracy with Kailee Davis, not the single, large Valenzuela-run conspiracy alleged in the indictment. "Whether the government's proof established a single conspiracy or multiple conspiracies is a question of fact for the jury." United States v. Morales, 113 F.3d 116, 118 (8th Cir. 1997). We review the jury's finding on this question under our deferential sufficiency-of-the-evidence standard. See Askew, 958 F.2d at 810. If we conclude that no reasonable jury could have found the single conspiracy charged in the indictment, we must then consider whether this variance in the government's proof "has prejudiced a defendant's substantial rights." Morales, 113 F.3d at 119.

The superseding indictment alleged that defendants knowingly conspired and agreed "together and with other persons known and unknown to the Grand Jury" to distribute controlled substances "in the District of Nebraska and elsewhere" during the time period alleged. The district court instructed the jury, without objection, that it

must decide "whether the conspiracy existed" and whether the government proved that Hamilton had "an understanding of the unlawful nature of the plan" and "some degree of knowing involvement and cooperation," even if she agreed "to play only a minor part in the conspiracy."

The evidence was sufficient to permit a reasonable jury to find that the alleged conspiracy existed and that Hamilton knowingly participated. Hamilton argues the government proved only that she had an agreement with Davis for a limited period of time, and that Davis started selling years before Hamilton was involved and continued selling after she stopped using Hamilton's house. However, "[m]ultiple groups and the performance of separate crimes or acts do not rule out the possibility that one overall conspiracy exists." United States v. Edwards, 994 F.2d 417, 421 (8th Cir. 1993) (quotation omitted), cert. denied, 510 U.S. 1048 (1994). "A single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." United States v. Smith, 450 F.3d 856, 860 (8th Cir. 2006) (quotation omitted). Here, Hamilton knowingly joined a far-flung conspiracy when she allowed distributor Davis to store multiple pounds of methamphetamine and the proceeds of drug sales at Hamilton's Nebraska residence.

The judgment of the district court is affirmed.

_____