# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-3248

_____

United States of America

*Plaintiff - Appellee*

v.

John Hunter, Sr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: March 10, 2017
Filed: July 10, 2017

_____

Before LOKEN, MURPHY, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted John Hunter, Sr. of one count of conspiracy to defraud the United States by filing false income tax returns in early 2010; nine counts of filing false claims for payment of tax refunds between February 2010 and January 2012;

and two counts of aggravated identity theft in January 2012. The district court[1] denied Hunter's motions for a new trial or judgment of acquittal and sentenced him to 70 months in prison. Hunter appeals, arguing that the government failed to prove the single conspiracy charged in the Second Superseding Indictment, and that the district court abused its discretion in admitting certain evidence, improperly imposed sentencing enhancements, and erred in denying his motion for a new trial based on ineffective assistance of counsel. We affirm.

## I. The Conspiracy Issue.

Hunter's primary contention on appeal is that the United States failed to prove a single overarching conspiracy because the evidence showed multiple, separate "rimless wheel conspiracies." When reviewing this claim, we view the evidence in the light most favorable to the jury's verdict. See United States v. Hamilton, 837 F.3d 859, 863 (8th Cir. 2016).

At trial, the government introduced 48 fraudulent 2009 income tax returns claiming $231,494 in refunds, Hunter's own return and the returns of 47 "filing co-conspirators" who were relatives of Hunter, people who lived with his relatives, and people who knew Hunter through church. The IRS paid refunds totaling $152,182.

The 47 fraudulent returns filed on behalf of others were electronically filed in early 2010 through a tax preparation website from IP addresses in Minnesota and northwestern Wisconsin. The returns accurately reported the individual's name, date of birth, social security number, and address. Many falsely reported wages between $13,000 to $16,000, income levels that supported claims for the maximum earned income tax credit. Some claimed tax withholding refunds, supported by fake W-2

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

forms from real employers. Others reported false refundable education credits and fictitious withholding from gambling winnings. IRS agents contacted employers listed on the returns and determined fictitious employment and wages were reported.

To receive tax refunds, Hunter or a tax-preparer associate would take out a prepaid debit card in the filing taxpayer's name, using that individual's correct social security number and date of birth, and entering the debit card's bank routing and account number on the tax return. IRS refunds were deposited in those accounts. Hunter would share a portion of the fraud proceeds with the filer.

IRS agents subpoenaed wireless providers associated with the IP addresses from which the returns were filed. The majority were filed from IP addresses traced to Hunter's home addresses. Seven others were filed between January 20 and January 25, 2010 from an address traced to the Country Inn and Suites in Cottage Grove, Minnesota, where Hunter had rented a room a few days before.

Two IRS agents questioned Hunter at his home in a January 2013 consensual interview. Hunter admitted that he participated in filing false returns. He said that others from Atlanta and Miami had filed the returns from a hotel or using the Wi-fi network in his home. Though expressing a desire to cooperate, Hunter refused to provide their names, saying "I got myself into this." When alerted that he could be charged with identity theft, Hunter inquired how that would be possible when friends had given him their identifying information for the purpose of filing false returns.

Four alleged filing co-conspirators testified for the government at trial. Tekoah Whitsett, who attended school with Hunter's daughter, testified that Hunter prepared her 2009 income tax return for a fee. The return falsified wages and employment information. The IRS paid a $6,774 refund, and Hunter paid Whitsett $1,500 in cash. When Whitsett asked for a copy of her tax return, Hunter told her that someone else possessed it, "that he had been doing this for years and that he had worked with

someone out in Woodbury." Maricus Roseman testified that Hunter offered to file his 2009 tax return. Roseman agreed and provided his personal identification information. The return fraudulently obtained a $3,319 refund. Roseman testified that Hunter only gave him a few hundred dollars, and explained that he was keeping the remainder of the refund to split with a few more people.

Noting that alleged conspirators testified at trial that they did not know each other, Hunter argues the government's evidence "at best" established multiple conspiracies, rather than the single conspiracy charged in the indictment -- a rimless wheel conspiracy in which multiple unconnected "spokes" dealt independently with the same "hub" conspirator, Hunter. See Kotteakos v. United States, 328 U.S. 750, 754-55 (1946). He asserts, without explanation, that he was "prejudiced by the variance between the indictment and the proof." Whether the government's proof established a single or multiple conspiracies is a question of fact; we reverse only if "no reasonable jury could have found the single conspiracy charged in the indictment . . . [and] this variance in the government's proof has prejudiced [the] defendant's substantial rights." Hamilton, 837 F.3d at 863 (quotation omitted). "A single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." Id. (quotation omitted).

The fundamental flaw in Hunter's contention is that it misrepresents the government's proof at trial. The district court instructed the jury that it must find an agreement between two or more persons to commit the conspiracy charged in the indictment: to "defraud the United States by filing false, fictitious, or fraudulent claims to the Internal Revenue Service." Hunter posits that the government only proved multiple conspiracies between filing conspirator "spokes" and Hunter, the central hub. But, as we have described, the evidence permitted a reasonable jury to find, based on Hunter's admissions and substantial circumstantial evidence, that the government proved a single conspiracy consisting of Hunter and other tax-preparer

conspirators who enlisted filer conspirators to carry out their multiple fraudulent transactions. Whether the filers were innocent participants or partially involved conspirators is irrelevant. A single conspiracy was proved.

## II. Evidentiary Issues.

In his motion for a new trial, Hunter argued the district court erred in admitting into evidence exhibits that recited the IP addresses used to file the false tax returns, because the documents contained hearsay and the government did not provide sufficient foundation for their admission. The district court denied the motion, noting that the IP address evidence "was maintained by the IRS as part of its master file, and the government established its admissibility as a business record under Federal Rule of Evidence 803(6)." As these exhibits were admitted without objection at trial, we review this contention for plain error. See Fed. R. Crim. P. 52(b).

David McNulty, an investigator analyst with the IRS Scheme Development Center, testified from personal knowledge that an IRS database contains all filed income tax returns submitted to the IRS and includes the IP address from which an electronically filed return originated. McNulty testified that he accesses and uses the IRS database as part of his investigative duties, the database is kept in the regular course of IRS business, and the records are created as returns are filed. McNulty personally prepared government Exhibits 15 and 17, spreadsheets of data taken from the 2009 tax returns at issue which included the IP addresses. Exhibits 18 through 20 are subsets of that same information. Foundation for other exhibits containing IP addresses was provided by a CenturyLink corporate security witness. Admission of these exhibits and denial of Hunter's belated motion for a new trial did not constitute abuse of discretion, let alone plain error. See United States v. Voice, 622 F.3d 870, 879 (8th Cir. 2010), cert. denied, 562 U.S. 1206 (2011).

## III. Sentencing Issues.

Citing <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), Hunter argues the district court erred in imposing loss amount and role-in-the-offense sentencing guideline enhancements because a jury did not make the underlying fact findings. This argument is foreclosed by circuit precedent "because the district court's findings did not increase the statutory maximum sentence or the statutory mandatory minimum sentence." <u>United States .v Mshihiri</u>, 816 F.3d 997, 1011 (8th Cir.), <u>cert. denied</u>, 137 S. Ct. 319 (2016). Hunter's additional "double counting" argument is unintelligible.

## IV. Motion for a New Trial.

Finally, Hunter argues at length that the district court abused its discretion in denying his motion for a new trial because trial counsel's representation fell below an objective standard of reasonableness and, "but for the cumulative effect of these unprofessional errors," there is a reasonable probability of a different outcome at trial. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). This issue was raised by Hunter in a post-verdict motion for new trial, and further argued in a Reply Motion for New Trial filed by newly-appointed counsel shortly before sentencing. The district court treated this later pleading as a second, written motion for new trial, considered all the ineffective assistance alleged, and denied the motion because Hunter had failed to make a sufficient showing of either ineffective assistance or prejudice. After careful review of the record before the district court, we conclude there was no abuse of discretion in denying the motion for a new trial on this ground.

The judgment of the district court is affirmed.

_____