# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1313

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Joseph Dodd, also known as | * | |
| Shakespeare, | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: October 19, 2004
Filed:   December 13, 2004

———————

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and RILEY, Circuit Judges.

———————

BOWMAN, Circuit Judge.

A jury convicted Appellee Joseph Dodd of conspiring to distribute and possess with intent to distribute cocaine and cocaine base (i.e., crack cocaine).  Thereafter, Dodd moved for a new trial, arguing that the verdict was contrary to the weight of the evidence.  The District Court[1] granted Dodd's motion and set aside the jury's verdict. The government now appeals the District Court's order granting Dodd a new trial. We affirm.

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

# I.

Joseph Dodd, also known as "Shakespeare," was tried alongside his nephew Fred Dodd based on their alleged membership in a conspiracy to distribute crack cocaine. According to testimony at trial, the conspiracy began in Clinton, Iowa, and over the years relocated to the Quad Cities area, which includes Davenport, Iowa, and Rock Island, Illinois. The conspiracy operated from before 1992 until January 2003, when Fred Dodd was arrested.

The government presented evidence that in 1994 Joseph Dodd was staying with Fred Dodd in a Clinton apartment and that Joseph Dodd often sold drugs to make money while he was there. Years later, Fred Dodd relocated to the Trinity Apartments in Davenport and along with others supplied numerous customers with crack cocaine. Joseph Dodd often came to the Trinity Apartments to purchase drugs from Fred Dodd and stayed with him on occasion.

Joseph Dodd later moved to Rock Island where he rented a room from George Butler. Both Butler and his girlfriend testified that they were addicted to crack and that Joseph Dodd usually supplied it free of charge. They also testified that numerous people, mostly young women, came to the residence with Joseph Dodd to buy drugs or get high. Further, Butler believed that Joseph Dodd cooked powder cocaine into crack cocaine in his room using baby food jars and a borrowed hot plate.

Joseph Dodd was stopped in January 2002 while driving in Rock Island. Dodd was carrying no identification, and he gave the police a false name and social security number. He claimed he could be identified if the police would transport him to Butler's residence. Before transporting him, a police officer conducted a pat-down search for weapons. The officer removed a handkerchief from Dodd's pocket before placing him in the patrol car and afterwards found a small baggie of crack cocaine

where Dodd had been standing. The police also found a digital scale containing cocaine residue in the car. Dodd was immediately arrested.

Several months later, someone from Butler's residence called 911 but hung up without speaking. When the police arrived to investigate, Dodd answered the door, told the police nobody had called, then shut and locked the door. When the police called for back-up and again knocked on the door, they were allowed in by Butler. Dodd was taken into custody while talking on his cell phone, allegedly trying to cover his face with his fingers to hide from the police.[2]

The police put Dodd in the patrol car and went back to search the residence, where they found numerous baggies containing cocaine residue. They also found a handgun hidden in a bathroom, but no fingerprints were found on the gun. The search of a bedroom containing Dodd's belongings revealed several baby food jars containing cocaine residue along with a type of postal scale often used to weigh drugs. While the police were searching the residence, Dodd kicked out the window of the patrol car and fled. He was arrested the next morning.

Dodd was charged with conspiracy to distribute and possess with intent to distribute cocaine and cocaine base. A key portion of the testimony against Dodd centered around an undercover purchase of drugs set up by the Davenport Police Department. On February 9, 2002, Detective Gina Clark drove to the Trinity Apartments with a confidential informant named Debra Cunningham to purchase drugs as they had done several times before. On this occasion, Clark observed a

_____

[2]The record is unclear as to why Dodd was not in custody after his arrest several months earlier and why Dodd was arrested during this incident. Butler testified that Dodd had pressed a gun to Butler's head and accused Butler of stealing money. The incident, however, resulted in Butler's arrest for being a felon in possession of a handgun, and it appears Dodd was not charged for the alleged assault. We note that Dodd was arrested before the police searched the residence.

person standing outside the apartments whom Clark believed to be conducting counter-surveillance for the activities inside. After Cunningham purchased drugs inside and returned to Clark's car, the person allegedly conducting counter-surveillance approached the car with another man named "Romeo." Romeo asked Clark for a ride and asked if he could get in her car to get high.[3] Clark told Romeo he could not, then drove away with Cunningham.

At trial, Detective Clark stated that the man she believed was conducting counter-surveillance "look[ed] like the defendant right there," indicating Joseph Dodd. Trial Tr. at 551. Upon cross-examination, however, Clark admitted that although she had seen the person allegedly conducting counter-surveillance, she did not know his identity, and that Cunningham had told her it was Joseph Dodd. Cunningham then testified that she could not distinguish between Joseph Dodd and his brother, Anthony Dodd, who had pleaded guilty to conspiracy charges. In fact, Cunningham stated she thought the two were twins. Cunningham also misidentified Joseph Dodd as "T" at trial, which was the nickname used by Anthony Dodd. Cunningham further testified that Joseph Dodd had been present at a separate assault, but the government stipulated that Joseph Dodd had not been present at that incident.

Joseph Dodd made two motions at trial for judgment of acquittal based on insufficiency of the evidence, both of which were denied by the District Court. The evidence was then submitted to the jury, and the jury found Dodd guilty. After the verdict was returned, Dodd moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. The District Court granted the motion and set aside the verdict in a detailed order stating its belief that a new trial was warranted. The government appeals.

---

[3]In its order, the District Court confuses Romeo with the person Clark believed was conducting counter-surveillance. We address this in Part II.A.

# II.

## A.

The granting of a new trial under Rule 33 is a remedy to be used only "sparingly and with caution." United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002) (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)). The Rule specifies that the remedy should be granted only where "the interest of justice so requires." Fed. R. Crim. P. 33. The decision to grant a Rule 33 motion is within the sound discretion of the District Court, and we will reverse only for an abuse of that discretion. Campos, 306 F.3d at 579–80. The District Court's discretion is broad in that it may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." Id. at 579. This discretion is abused, however, if the District Court fails to consider a factor that should have been given significant weight, considers and gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering and weighing only proper factors. Id. at 580.

To convict Dodd on the conspiracy charge, the government had to prove that a conspiracy to distribute cocaine existed, that Dodd knew of the conspiracy, and that Dodd knowingly joined and participated in the conspiracy. See United States v. Munoz, 324 F.3d 987, 990 (8th Cir. 2003). Only "slight evidence" was necessary to link Dodd to the conspiracy. United States v. Navarrete-Barron, 192 F.3d 786, 793 (8th Cir. 1999).

The District Court had no doubt the government proved the existence of a conspiracy. The District Court also stated it was reasonable for the jury to infer that Dodd knew of the conspiracy. What the government failed to conclusively show, according to the District Court, was "some degree of knowing involvement and cooperation" in the conspiracy by Dodd. Order of Jan. 7, 2004 (granting defendant

-5-

Joseph Dodd's motion for new trial) ("Order"), at 16 (quoting United States v. Casas, 999 F.2d 1225, 1229 (8th Cir. 1993), cert. denied, 510 U.S. 1078 (1994)). The government claims the District Court considered improper factors or made errant conclusions in reaching this decision. We disagree.

To begin with, the government's inferences of Dodd's involvement in the conspiracy are tenuous at best. The government claims the crack cocaine Joseph Dodd allegedly possessed was "ready for resale, consistent with the manner that Joseph Dodd and Fred Dodd had distributed it in the past." Brief of Appellant at 23. But the District Court found there was conflicting evidence as to whether the crack cocaine at issue was actually ready for resale given its weight. In addition, a chunk of crack cocaine in a plastic baggie is fairly unremarkable in distribution cases. Even if such packaging was consistent with the manner in which Fred Dodd had distributed cocaine in the past, we cannot say it established an agreement to distribute cocaine between Joseph Dodd and Fred Dodd.

Further, we think the government overstates the significance of a single misinterpretation by the District Court. It is true the District Court confused the person who asked to get high in Detective Clark's car with the person allegedly conducting counter-surveillance. The District Court reasoned that because the person asked to get high in the car, he likely was not conducting counter-surveillance for drug-selling activities. The record shows these were two different people, thereby precluding the District Court's reasoning. The government argues that this amounts to "clear error." Brief of Appellant at 24.

The District Court's primary concern, however, was with the identification of Dodd as the person conducting counter-surveillance. Clark's identification of the person was based on second-hand information from Cunningham, who admittedly confused Joseph Dodd with Anthony Dodd. Indeed, Cunningham misidentified Joseph Dodd both at trial and in her testimony. Thus, the District Court used the

misinterpretation only to "bolster[]" its conclusion there was no link shown between Joseph Dodd and the conspiracy. Order at 18. We therefore cannot say the District Court made a clear error of judgment.

Moreover, in claiming the District Court erred by questioning any link shown between Dodd and the conspiracy, several of the government's arguments are unconvincing. For example, the District Court pointed out a lack of Dodd's fingerprints on any of the evidence seized. In rebuttal, the government points to expert testimony at trial that "a person does not necessarily leave a fingerprint whenever something is touched." Brief of Appellant at 25.

In another example, the District Court noted that although the government seized and subpoenaed the records for many cellular phones, it found not a single call linking Dodd to any of the conspirators. The government rebuts this fact by arguing that no phones associated with Dodd were ever confiscated. This rebuttal raises a question as to the whereabouts of the cellular phone Dodd was "holding . . . to his face" when he was arrested. Trial Tr. at 497.

As a third example, the District Court was troubled that the crack cocaine allegedly possessed by Dodd was not produced at trial. The government rebuts this by pointing to testimony that the items were "destroyed routinely at the conclusion of the state prosecution." Brief of Appellant at 24. Perhaps, but as with all three examples, evidence missing at trial is not transformed into evidence on appeal by an explanation of its absence.

In summary, even though only slight evidence was necessary to link Dodd to the conspiracy, it was within the District Court's province to weigh the evidence, disbelieve witnesses, and grant a new trial—even in the face of substantial evidence. On appeal, the government has dutifully rehashed the evidence that Dodd possessed and distributed drugs, but the District Court assumed these two facts in reaching its

conclusion regarding Dodd's conviction on the conspiracy charge. The District Court granted a new trial because it was "left with a perpetual 'bad taste' in its mouth over the nature, quantity, and character of evidence" of Dodd's involvement in the conspiracy. Order at 23. In these circumstances, we cannot say the District Court abused its discretion in granting Dodd's motion for a new trial.

**B.**

In his brief, Dodd argues that his retrial is barred by the Double Jeopardy Clause of the Fifth Amendment. See U.S. Const. amend. V. Dodd did not raise this constitutional challenge with the District Court, nor did he raise the issue in a cross-appeal. But because the government has responded to Dodd's argument in its reply brief, we will address the issue out of an abundance of caution. The Double Jeopardy Clause is implicated where a conviction is set aside because the evidence supporting it is "legally insufficient." Tibbs v. Florida, 457 U.S. 31, 41 (1982). Evidence is legally insufficient if it is so lacking that the case does not merit submission to the jury. Id. By contrast, a defendant may be retried where the conviction is set aside as being "against the *weight* of the evidence." Id. at 42 (emphasis added).

In viewing the entire order, it is clear the District Court did not find the evidence to be legally insufficient. The District Court denied Dodd's mid-trial and end-of-trial motions under Rule 29—the vehicle for obtaining judgment of acquittal based on the legal insufficiency of the evidence—and submitted the case to the jury. See Fed. R. Crim. P. 29. Further, the standard of review the District Court properly applied in its order was whether the verdict was "contrary to the *weight* of the evidence." Order at 2 (emphasis added). Finally, the District Court based its order on the "nature, quantity, and character of evidence" against Dodd rather than on a complete lack of evidence. Id. at 23. We therefore hold that Dodd may be retried without violating his Fifth Amendment rights.

## III.

For the reasons stated, we affirm the District Court's order granting Dodd a new trial under Rule 33, and we hold that Dodd may be retried without violating the Double Jeopardy Clause of the Fifth Amendment.

_____