# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2066

_____

United States of America

*Plaintiff - Appellee*

v.

Jose Luis Delacruz

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: March 10, 2017
Filed: July 31, 2017

_____

Before LOKEN, MURPHY, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

An October 2014 superseding indictment charged Jose Luis Delacruz with conspiracy to possess with intent to distribute and distribute over 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One), and use of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two). After a three-day trial, a jury convicted Delacruz of

both offenses. The district court[1] denied post-trial motions for judgment of acquittal and a new trial and sentenced Delacruz to the mandatory minimum sentence of life in prison on Count One and a consecutive seven years on Count Two. Delacruz appeals, arguing the district court erred in denying a judgment of acquittal because evidence at trial showed multiple conspiracies rather than the single conspiracy charged in the indictment; abused its discretion in denying the motion for a new trial because the court failed to give a specific unanimity instruction on Count Two and the weight of the evidence did not support the jury's verdict; and abused its discretion in denying his pretrial motions for substitute counsel. We affirm.

## I. Background.

Count One charged that from January 2013 until October 2014 Delacruz, Patrick Peltier, Anthony Farrell, Kimberly Ratliff, and Brian McMahan conspired to distribute in excess of 500 grams of methamphetamine in North Dakota, Minnesota, and elsewhere, committing overt acts of concealment, use of telecommunication facilities and United States currency, and violence to further their drug trafficking activities. Count Two charged that Delacruz and Peltier used a firearm during a drug trafficking crime "on or about March 21, 2014." We summarize the evidence at trial viewed in the light most favorable to the jury's verdict. See United States v. Buckley, 525 F.3d 629, 632 (8th Cir.), cert. denied, 555 U.S. 977 (2008).

Conspirator Anthony Farrell testified that he started dealing methamphetamine for Delacruz in 2013, typically buying a quarter-gram to an eight-ball (3.5 grams) each week. Delacruz fronted the sales, meaning Farrell bought the methamphetamine on credit and repaid Delacruz after resales to others. At the end of the summer, Delacruz introduced Farrell to his source, Robles. Farrell purchased directly from

[1]The Honorable Ralph R. Erickson, then Chief Judge of the United States District Court for the District of North Dakota.

Robles until Delacruz returned to selling drugs one month later. Farrell then purchased from both Robles and Delacruz. In early 2014, Farrell fell behind in his payments to Robles. Robles showed Farrell a video of a beheading based on failure to pay a drug debt, and Delacruz hounded Farrell about paying. At one point, Delacruz and Robles took Farrell for a "tense" drive in the country, and Delacruz told Farrell he needed to pay his debt. This scared Farrell, who then paid his debt to Robles through Delacruz.

Conspirator Kimberly Ratliff testified that she dealt methamphetamine for Delacruz directly and through Farrell. Delacruz told Ratliff to get the title to Farrell's car to satisfy his drug debts. When she failed to do this quickly, Delacruz and Peltier threatened Ratliff's father and children at their home. On another occasion, Delacruz made Ratliff strip naked and pointed a gun at her. And on yet another occasion, after Ratliff failed to pay Delacruz on time, Delacruz took her for a ride in the country where he threatened her with a gun and said he was going to kill her baby.

Conspirator Brian McMahan testified that he began using methamphetamine with Delacruz during the summer of 2013. He drove Delacruz in exchange for drugs and witnessed Delacruz sell methamphetamine "a couple dozen" times. At one point, McMahan drove Ratliff to the country, where Delacruz yelled at her and pretended to have a gun. On March 21, 2014, McMahan accompanied Delacruz to the apartment of Pat Peltier, who served as Delacruz's "muscle," because Delacruz had to "deal with a guy." Inside the residence, Delacruz argued with Shawn Ellingson, whom McMahan had never met. Delacruz brandished his gun, used it to hit Ellingson in the nose, and put it down Ellingson's throat.

Ellingson testified that he was friends with Peltier and had witnessed Delacruz handle dealer-level amounts of methamphetamine in Peltier's apartment. On March 21, 2014, Delacruz told Ellingson to go to Peltier's apartment where Delacruz called Ellingson a snitch, made him strip, punched him, and shoved a gun down his throat.

Delacruz yelled, "I fucking hate you," and "I'm going to kill you." Delacruz and Peltier dragged Ellingson to his car, drove him to a remote area, and forced him out into the cold winter night, taking Ellingson's car keys. Two young girls picked up Ellingson and brought him home. Police found his abandoned car and went to his apartment. Ellingson first told police about the assault, and later told them about the methamphetamine distribution. Detective Daniel Cassetta testified that a warrant search of Peltier's apartment uncovered baggies for distributing illegal narcotics. He alerted federal authorities, who opened a drug distribution investigation.

Other cooperating witnesses testified to the extent of the conspiracy and Delacruz's role. Jessica Kirchoffner testified that Farrell was her methamphetamine dealer; in 2013, she helped him deliver roughly ten thousand dollars to Delacruz. Heather Schake dealt small amounts of drugs for Delacruz and witnessed some of his drug transactions. Delacruz once asked Schake if she would kill Ratliff because he was paranoid about her being a snitch. Brian Noyes bought drugs from Delacruz and witnessed transactions involving large sums.

## II. The Variance Issue.

Delacruz argues that the trial evidence established multiple conspiracies rather than the single conspiracy charged in the indictment. Citing <u>Kotteakos v. United States</u>, 328 U.S. 750 (1946), he contends that Farrell's testimony that he purchased methamphetamine from Robles as well as Delacruz showed a rival conspiracy, parallel to the one charged, resulting in a variance that infringed his substantial rights and required a judgment of acquittal. "Whether the government's proof established a single conspiracy or multiple conspiracies is a question of fact; we reverse only if no reasonable jury could have found the single conspiracy charged in the indictment and this variance in the government's proof has prejudiced the defendant's substantial rights." <u>United States v. Hunter</u>, No. 16-3248, slip op. at 4 (8th Cir. July 10, 2017), quoting <u>United States v. Hamilton</u>, 837 F.3d 859, 863 (8th Cir. 2016). "Failure to

prove the single drug conspiracy charged in an indictment results only in a variance, rather than an acquittal . . . . If the elements of an unlawful conspiracy are proved, relief because of variance requires an additional showing of prejudice." Buckley, 525 F.3d at 634 n.2.

Here, Delacruz does not (and could not) argue that the above-summarized evidence did not permit a reasonable jury to find that the elements of an unlawful conspiracy were proved. We conclude a reasonable jury could find the government proved the single conspiracy charged in the indictment. As in United States v. Slagg, 651 F.3d 832, 842 (8th Cir. 2011), "the Government's evidence largely involved the same group of individuals working with one another to conduct the same activity, distribution of methamphetamine, in the same location, . . . during the time frame alleged in the indictment." A single conspiracy may exist despite being composed of multiple groups, even when those groups compete. See United States v. Delgado, 653 F.3d 729, 736 (8th Cir. 2011), cert. denied, 565 U.S. 1115 (2012).

Delacruz also cannot show prejudice from any multiple-conspiracy variance. Even if Farrell's purchases of methamphetamine from Robles were part of a separate conspiracy, Delacruz was a key participant in that conspiracy as well. "The chance of a prejudicial spillover effect from one conspiracy to another if the defendant is a member of both conspiracies is minimal if not nonexistent." Buckley, 525 F.3d at 634 (quotation omitted); see United States v. McCauley, 715 F.3d 1119, 1125 (8th Cir. 2013).

Delacruz argues he was prejudiced because the indictment denied him adequate notice of the evidence against him. This contention, not raised before trial, is without merit. The detailed indictment "fully and fairly apprised" Delacruz of the charges against him, and the government's trial evidence was not "materially different" from the indictment's allegations. United States v. Whirlwind Soldier, 499 F.3d 862, 870-71 (8th Cir. 2007), cert. denied, 552 U.S. 1209 (2008). "Where the indictment fairly

-5-

specifies the offense charged and notifies the defendant of the particulars, the defendant has knowledge that other overt acts underlying the conspiracy might be pleaded at trial." United States v. Lewis, 759 F.2d 1316, 1344 (8th Cir. 1985).

### III. The Unanimity Instruction Issue.

Count Two of the indictment alleged that, "on or about March 21, 2014," Delacruz and Peltier knowingly used a firearm during and in furtherance of a drug trafficking crime. Jury Instruction No. 6 instructed that the offense charged in Count Two has "two essential elements": "One, On or about March 21, 2014, the defendant committed the crime of conspiracy to possess with intent to distribute and distribute a controlled substance; and Two, The defendant knowingly used, carried, and brandished a firearm in relation to and in furtherance of that crime." Instruction No. 9 instructed that "the verdict -- whether guilty or not guilty -- must be unanimous."

Delacruz asserts that the district court committed plain error that requires a new trial because the evidence at trial included other incidents of drug-related gun use (none of which occurred on March 21, 2014). As use of a firearm in furtherance of the drug conspiracy was an element of Count Two, Delacruz argues a more specific unanimity instruction was required.

"A general unanimity instruction is usually sufficient to protect a defendant's Sixth Amendment right to a unanimous verdict." United States v. Boyle, 700 F.3d 1138, 1142 (8th Cir. 2012) (quotation omitted), cert. denied, 133 S. Ct. 2371 (2013). Though "a genuine risk of jury confusion" may require a specific unanimity instruction, the district court does not err if it instructs the jury its verdict must be unanimous and "the indictment specifies the particular defendants, the date, and the alleged illegal conduct that constitutes each specific count charged against each defendant." United States v. Gruenberg, 989 F.2d 971, 975 (8th Cir.), cert. denied, 510 U.S. 873 (1993). Here, the inclusion of the March 21, 2014 date in both the

indictment and jury instructions and the general unanimity instruction eliminated any genuine risk of jury confusion. The district court did not err, much less plainly err, in not giving a more specific unanimity instruction for Count Two. See United States v. Alcorn, 638 F.3d 819, 822-23 (8th Cir. 2011).

## IV. Weight of the Evidence.

Delacruz argues the district court abused its discretion in denying his motion for a new trial because the jury's verdict was against the weight of the evidence. See Fed. R. Crim. P. 33(a). "[W]e will reverse the district court's ruling on the motion for new trial only if we find that ruling to be a clear and manifest abuse of discretion." United States v. Huyck, 849 F.3d 432, 444 (8th Cir. 2017) (quotation omitted). "Motions for new trials based on the weight of evidence generally are disfavored. . . . A district court may grant a new trial for insufficiency of the evidence only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." United States v. Harris-Thompson, 751 F.3d 590, 600 (8th Cir.) (quotation omitted), cert. denied, 135 S. Ct. 415 (2014).

Delacruz argues a miscarriage of justice may have occurred because the government's case lacked physical evidence and its witnesses were motivated by the potential for leniency, were memory-impaired from past drug use, and provided some inconsistent statements. At the start of trial, the court gave preliminary instructions explaining that a cooperating witness could receive a reduced sentence for his or her cooperation: "Whether or not the testimony of a witness may have been influenced by his or her hope of receiving a reduced sentence is for you to decide." In its post-trial order denying Delacruz a new trial, the court explained: "Witness credibility was an issue squarely in front of the jury. The court has reviewed the evidence in the record and finds there is overwhelming evidence to support the verdict on each count." We decline to second-guess the court's evaluation of witness credibility. See United States v. Gabe, 237 F.3d 954, 961 (8th Cir. 2001).

"We have repeatedly upheld jury verdicts based solely on the testimony of conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." Buckley, 525 F.3d at 632. Although there were minor inconsistencies, the government's numerous witnesses told a consistent narrative as to Delacruz's role in the drug distribution conspiracy, and his use of a gun in the drug-related assault on Ellingson. The district court did not abuse its discretion in denying a new trial.

## V. Substitution of Counsel.

Delacruz argues he is entitled to a new trial because the district court abused its discretion in denying his multiple pretrial motions to substitute counsel. We briefly summarize the lengthy record relating to this issue.

In November 2014, Delacruz's first attorney withdrew after recognizing a likely conflict of interest. The district court appointed Brian Toay to represent Delacruz. Two months later, Delacruz filed a *pro se*, *ex parte* motion requesting a new attorney because Toay had visited once, called once, and refused to file multiple motions.[2] On February 5, 2015, the court held an *ex parte* hearing. Delacruz complained about Toay's refusal to file motions. The court asked Toay whether there was an irretrievable breakdown in the attorney-client relationship. Toay replied that he had been unable to get past the subject of criminal history and Delacruz had hung up twice, but Toay was willing to continue and try to convince Delacruz to talk about the substance of his case. Judge Erickson encouraged Delacruz to work with Toay.

---

[2] Delacruz wanted Toay to challenge Delacruz's career offender classification under the sentencing guidelines. Toay responded to Delacruz with a three-page letter explaining that, while he might be able to argue about whether Delacruz should be subject to the career offender classification, this argument was moot because Delacruz was facing a mandatory minimum sentence of life in prison based on the offense charged and his two prior convictions for felony drug offenses.

The court held another *ex parte* hearing on February 10. Delacruz said he wanted to hire his own attorney; Toay said he was willing to continue representing Delacruz. Noting that defendants frequently assert they will hire their own counsel and fail to do so, the court told Delacruz to work with Toay until he retained his own counsel and denied the motion to substitute counsel, noting that "anyone I appoint is going to have similar difficulties because I think they arise out of the overall frustration with the circumstances that [Delacruz] finds himself in."

Toay contacted the district court on March 5 requesting advice on preparing for trial. Toay said he had visited Delacruz four times, but Delacruz refused to discuss anything but sentencing issues or refused to speak at all. The district court held another *ex parte* status conference and suggested that Delacruz work with Toay to prepare his defense, so that any new counsel Delacruz hired would not start from scratch. Toay agreed to continue preparing as though he would be trying the case.

On April 27, Delacruz sent the district court a letter alleging "malpractice," "mistreatment," and "negligent bias" by Toay. Delacruz complained that Toay said he would likely lose at trial and requested appointment of an attorney who would file the motions Delacruz requested, including motions to challenge prior convictions and to "suppress exculpatory evidence." The court held another *ex parte* hearing, allowed Delacruz and Toay to comment, and concluded there had not been an irretrievable breakdown in the relationship. In denying the motion for substitute counsel, the court noted, "An attorney has a duty to give his client a fair assessment of the likely outcome of trial, and a frank assessment of the case is not abandonment."

At the final pretrial conference, the government stated that Delacruz had rejected a plea agreement reducing the mandatory minimum sentence to ten years in prison. Delacruz accused Toay of never providing this offer in writing, which Toay denied. After the court allowed the parties time to discuss the offer, Delacruz rejected

it and complained again that Toay refused to file motions. The court permitted Delacruz to state these motions on the record and concluded none had merit.[3]

Toay represented Delacruz at the three-day trial. Following his conviction, Delacruz filed a disciplinary complaint against Toay, and the district court appointed a new attorney, Jade Rosenfeldt, who helped Delacruz file a post-trial motion for a new trial based on the court's denial of his motions to substitute counsel. The district court denied the motion, noting that the breakdown in communication between Delacruz and Toay "was the direct result of Delacruz's frustration when his appointed counsel declined to pursue pointless motions and meritless legal theories. Delacruz did not wish to believe that the information being provided by his counsel was true and on that basis alone he refused to communicate with him."

Subsequent events confirmed the district court's prediction that granting substitute counsel would not solve the problem. Soon after the court appointed Rosenfeldt as substitute post-trial counsel, Delacruz complained that Rosenfeldt was unwilling to raise numerous issues. He later filed a disciplinary complaint against her. We appointed Steven Morrison to represent Delacruz on appeal. Though he has vigorously done so, Delacruz then attempted to file a *pro se* appellate brief, complaining that Morrison refused to raise numerous issues to this court.

"A motion for appointment of substitute counsel is committed to the district court's sound discretion." United States v. Taylor, 652 F.3d 905, 908 (8th Cir. 2011). To prevail, a defendant must show "justifiable dissatisfaction" with his attorney, which "can arise from irreconcilable conflict, a complete breakdown in

---

[3]First was a motion to challenge the use of hearsay evidence, which the court stated it would address as raised during trial. Next was a motion to reduce charges based on a lack of physical evidence, which the court stated was an issue for the jury. Third was a motion to strike prior convictions -- a sentencing issue that the court said was not ripe until there was an adjudication of guilt.

-10-

communication, or any other factor interfering significantly with an attorney's ability to provide zealous representation." Id. (quotation omitted). In deciding such a motion, "the district court must balance several factors, including 'the need to ensure effective legal representation, the need to thwart abusive delay tactics, and the reality that a person accused of crime is often genuinely unhappy with an appointed counsel who is nonetheless doing a good job.'" United States v. Barrow, 287 F.3d 733, 738 (8th Cir.) (citation omitted), cert. denied, 537 U.S. 1024 (2002).

The record clearly reveals that Delacruz's unwillingness to communicate with Toay before trial resulted from Delacruz's refusal to move beyond a meritless sentencing issue and prepare a trial defense. The district court repeatedly and carefully considered Delacruz's complaints and did not abuse its discretion in denying the motions to substitute counsel. "The focus of the justifiable dissatisfaction inquiry is the adequacy of counsel in the adversarial process, not the accused's relationship with his attorney." Barrow, 287 F.3d at 738. Justifiable dissatisfaction "does not include a defendant's frustration with counsel who does not share defendant's tactical opinions but continues to provide zealous representation." Id. (citation omitted); see United States v. Trevino, 829 F.3d 668, 674 (8th Cir. 2016); Taylor, 652 F.3d at 908. Where a lack of communication results from a defendant's refusal to speak with counsel, rather than counsel's ineffectiveness, the defendant's stonewalling does not entitle him to new counsel. See Taylor, 652 F.3d at 909; Barrow, 287 F.3d at 738. This is particularly true where granting the motion would require a continuance or delay the trial. See Barrow, 287 F.3d at 738.

The judgment of the district court is affirmed.

_____