# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2194
_____

United States of America

*Plaintiff - Appellee*

v.

Britt Arthur Lander

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa
_____

Submitted: March 19, 2025
Filed: July 21, 2025
_____

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

After a police officer informed Britt Lander of his right to counsel during a custodial interrogation, Lander laughed and stated, "My old lady is my attorney, I want her present." The officer refused to let Lander contact his "old lady" and continued the interrogation, during which Lander admitted to his involvement in methamphetamine trafficking. Lander unsuccessfully sought to suppress his incriminating statement, and a jury convicted him of conspiring to distribute

methamphetamine after having previously been convicted of a felony drug offense. On appeal, Lander challenges the denials of his motions to suppress and for a new trial and contends the district court[1] erred in sentencing him. We affirm.

## I.  Background

In June 2022, Alcester Police Department Chief Austin Schuller performed a traffic stop on Lander's vehicle and discovered drug paraphernalia and small baggies of methamphetamine.  Chief Schuller informed Lander of his *Miranda* rights and took him to the Alcester Police Department for questioning. *See Miranda v. Arizona*, 384 U.S. 436 (1966).  At the station, South Dakota Criminal Investigation Agent Ryan Pennock read Lander his *Miranda* rights again.  After Agent Pennock informed Lander that an attorney would be appointed if he could not afford one, Lander stated, "I can't afford sh*t."  Agent Pennock reiterated that counsel would be appointed to represent him and that Lander did not have to answer any of his questions.  Lander responded by laughing and saying, "My old lady is my attorney, I want her present." Lander explained that he wanted his "old lady" present because he trusted her, but Agent Pennock did not allow Lander to contact her.  Agent Pennock told Lander he could tell her about the questioning afterwards and proceeded to interrogate Lander.

During this recorded interview, Lander identified three individuals involved in drug trafficking — Hugo Torres, José Duenas-Topete, and Isidro Jaramillo — and discussed purchasing methamphetamine from them for approximately two years. After initially denying selling drugs, Lander eventually remarked that he did not sell to many people.  Lander also admitted to helping Duenas-Topete take apart a tire containing six to eight pounds of methamphetamine.  At times during the traffic stop and subsequent interview, Lander showed signs of nervousness and drug use, but he answered the officer's questions appropriately and did not appear to be confused.

---

[1]The Honorable Leonard T. Strand, United States District Judge for the Northern District of Iowa, who was Chief Judge at the time of the suppression hearing and trial.

Officers testified Lander's signs of methamphetamine use were not enough to be considered driving under the influence.

Lander was subsequently indicted for conspiring to distribute methamphetamine after having previously been convicted of a felony drug offense. He moved to suppress his statements, arguing he was too intoxicated and sleep-deprived to voluntarily waive his rights and that he invoked his right to counsel when he requested the presence of his "old lady." Lander testified at the suppression hearing that he had been released from jail seven days before the stop, had steadily used methamphetamine over that week, and did not recall sleeping during that time. Chief Schuller and Agent Pennock testified that Lander appeared nervous and possibly intoxicated but they did not believe he was unable to understand them. The district court denied the motion to suppress, concluding Lander's will was not overborne since he understood what was happening and did not appear to be overly fatigued or intoxicated. As to his claimed invocation of the right to counsel, the district court determined Lander's request for the presence of his "old lady" was not a clear and unequivocal request for an attorney.

In addition to introducing Lander's incriminating statements, the government called two of the co-conspirators Lander identified in his police interview to testify against him at trial. The co-conspirators testified that Lander had purchased several pounds of methamphetamine from them and had assisted on occasion in unpacking and storing the drugs. The quantities they cited at trial were generally larger than the amounts identified in their earlier statements to law enforcement and those Lander admitted he possessed in his interview. Video and photo evidence seized from Duenas-Topete's phone showed Lander removing "kilo-type" packages of methamphetamine out of a tire. An agent also testified an undercover officer had purchased six pounds of methamphetamine from Jaramillo, a confidential source obtained ten pounds from Torres, and Lander had been present during both buys.

The jury convicted Lander on the single count. Lander moved for a judgment of acquittal and a new trial, arguing the evidence was insufficient to convict because

it relied on unreliable testimony from cooperating witnesses. The district court denied these motions, noting the cooperating witnesses' testimony was generally consistent with each other and supported by video evidence and Lander's statements. At sentencing, Lander challenged the presentence investigation report's (PSR) findings as to the drug quantity because he claimed the findings depended on unreliable testimony from cooperating witnesses. He also argued he was entitled to a reduction in his offense level as a minor participant in the conspiracy. The district court overruled his objections and sentenced him to 360 months of imprisonment, the bottom of his advisory sentencing range under the United States Sentencing Guidelines Manual (Guidelines).

## II. Analysis

On appeal, Lander contests the denial of his motions to suppress and for a new trial. He also challenges his sentence, claiming the district court erred in its Guidelines calculation and that it imposed a substantively unreasonable sentence. We affirm.

### A. Motion to Suppress

Lander first argues the district court erred in denying his motion to suppress statements he made while in custody after his traffic stop. He claims that he did not validly waive his *Miranda* rights because he was too inebriated and sleep-deprived to voluntarily consent and that he invoked his right to counsel when he requested to speak to his "old lady." We apply a mixed standard of review to the denial of a motion to suppress evidence: the district court's legal conclusions are reviewed de novo while the factual findings underlying those conclusions are reviewed for clear error. *United States v. Figueroa-Serrano*, 971 F.3d 806, 814 (8th Cir. 2020).

Though Lander was informed of his *Miranda* rights, he claims he did not provide a voluntary, knowing, and intelligent waiver because he had used methamphetamine and had not slept in several days prior to the questioning. A

-4-

defendant's "waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) (quoting *United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006)). We consider the "totality of the circumstances and must determine whether the individual's will was overborne." *Id.* (quoting *United States v. Castro-Higuero*, 473 F.3d 880, 886 (8th Cir. 2007)). While sleeplessness and drug use are relevant to this analysis, they "do not automatically render a confession involuntary." *Id.* (quoting *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990)). Indeed, "we have upheld the conclusion that a suspect who recently used methamphetamine and had not slept for five days voluntarily waived his *Miranda* rights where police officers testified that they had no knowledge of these alleged impairments and the suspect did not act intoxicated." *Id.* (citing *Casal*, 915 F.2d at 1229). Likewise, an intoxicated defendant validly waived his rights when he "had previous experience with law enforcement" and "spoke in a manner which indicated he understood what was happening." *United States v. Howard*, 532 F.3d 755, 763 (8th Cir. 2008).

At the suppression hearing, Lander testified that he had consumed ten to twelve grams of methamphetamine in the week prior to the traffic stop and that he did not recall sleeping that week. Officers noticed signs consistent with using methamphetamine, such as Lander's nervousness, body tension, and difficulties sitting still, but they also explained they did not think his behavior indicated he was impaired enough as to have been driving under the influence. Lander did not tell officers about his lack of sleep, and the officers testified that they did not see any signs of fatigue. Moreover, Lander gave appropriate responses during the interview to the officers, did not appear to be confused or unable to think clearly, and had prior experience with law enforcement. Based on these unchallenged factual findings, the district court did not err in concluding Lander's waiver was voluntary rather than the result of his will being overborne. *See Gaddy*, 532 F.3d at 788.

Next, Lander claims questioning should have ceased because he invoked his right to counsel. This alleged invocation occurred when Agent Pennock read Lander

his *Miranda* rights for the second time and stated, "My old lady is my attorney, I want her present." Agent Pennock rejected Lander's request and started interrogating him. Lander contends he invoked his right to counsel because he clearly requested the presence of his partner, who is not an attorney but whom he considered to be his legal advisor.

When a suspect invokes his right to counsel, he "cannot be questioned regarding any offense unless an attorney is actually present." *Davis v. United States*, 512 U.S. 452, 458 (1994). But "we have consistently held that only a clear and unequivocal request for the assistance of counsel may serve to invoke a defendant's right." *United States v. Kelly*, 329 F.3d 624, 630 (8th Cir. 2003). This is an objective test, meaning we consider whether the defendant "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459. If "the officers conducting the questioning reasonably do not know whether or not the suspect wants a lawyer," they can continue the interrogation. *Id.* at 459–60. Jokes about wanting an attorney are also insufficient to invoke one's right to counsel. *See United States v. Giboney*, 863 F.3d 1022, 1029–30 (8th Cir. 2017).

We conclude a reasonable officer in these circumstances would not have understood Lander's statement that his "old lady is [his] attorney" and that he "want[ed] her present" as a request for an attorney. Lander's claim that his old lady was his lawyer was made in a joking manner after he made multiple prior requests to contact her. Several times during the traffic stop, Lander asked Chief Schuller if he could call his partner, whom he referred to as both his girlfriend and his old lady. Almost immediately after Agent Pennock introduced himself and started his interview at the police station, Lander again requested to call his old lady or have Agent Pennock call her. Lander stated he wanted to talk to her so she could calm him down and that he did not want to make any decisions without her. Shortly thereafter, Agent Pennock read Lander his *Miranda* rights, including his right to appointed counsel, and Lander made his claimed invocation. Lander laughed while

claiming his old lady was his attorney, and Agent Pennock responded by explaining why interview protocol would not allow Lander's old lady to be present while they discussed possible cooperation due to concerns that multiple people would be unable to keep a secret. Agent Pennock's response indicated he did not understand Lander to have asked for an attorney, and Lander made no other statements to change this impression. Instead, Lander remarked that he trusted his partner and that she could keep a secret. Lander ultimately acknowledged he understood why Agent Pennock denied his request and explained he had asked for her presence so she could calm him down. In this context, a reasonable officer would not have interpreted Lander's remarks as a clear and unequivocal request for an attorney. Rather, Lander asked for the presence of a non-attorney whom he jokingly claimed was his attorney.

Lander's request for the presence of a trusted lay person is not an invocation that requires a custodial interrogation to cease. *See Davis*, 512 U.S. at 459–60, 462; *Fare v. Michael C.*, 442 U.S. 707, 718–19, 722 (1979). As the Supreme Court has explained, *Miranda* is "based on the unique role the lawyer plays in the adversary system of criminal justice" as a "protector of the legal rights of that person in his dealings with the police and the courts." *Fare*, 442 U.S. at 719. This "pivotal role of legal counsel . . . distinguishes the request for counsel from the request for a probation officer, a clergyman, or a close friend." *Id.* at 722. A non-lawyer friend or spouse "is not in a position to advise the accused as to his legal rights" to help him navigate the interrogation. *See id.* at 719. The existence of a trusted relationship between the suspect and the non-attorney does not show that person "is capable of rendering effective legal advice sufficient to protect the [suspect's] rights during interrogation by the police, or of providing the other services rendered by a lawyer." *Id.* at 722. As a result, a request for a lay person whom a suspect "considered trustworthy enough to give him reliable advice" is insufficient to invoke the right to counsel. *See id.* at 723. "Unless the suspect actually requests an attorney, questioning may continue." *Davis*, 512 U.S. at 462.

We therefore conclude the district court did not err in denying Lander's motion to suppress his statements.

## B. Motion for a New Trial

Lander next argues the district court should have granted his motion for a new trial because the government's case was based on cooperating witnesses who gave inconsistent testimony. We review the denial of a motion for a new trial based on the weight of the evidence for abuse of discretion. *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004). When considering a motion for a new trial, the district court can "weigh the evidence, disbelieve witnesses, and grant a new trial even when there is substantial evidence to sustain a verdict." *United States v. Dowty*, 964 F.3d 703, 708 (8th Cir. 2020) (quoting *United States v. Amaya*, 731 F.3d 761, 764 (8th Cir. 2013)). These motions are disfavored and should be granted "only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *Id.* (quoting *United States v. Delacruz*, 865 F.3d 1000, 1006 (8th Cir. 2017)). We reverse the denial of a motion for a new trial if the district court "fails to consider a factor that should have been given significant weight, considers and gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering and weighing only proper factors." *Amaya*, 731 F.3d at 764 (quoting *Dodd*, 391 F.3d at 934).

Lander argues the district court erred by concluding the testimony of Torres and Duenas-Topete, two co-conspirators turned cooperating witnesses, was credible because they "had clear incentives to testify in a way that would benefit themselves" and provided inconsistent testimony as to the quantity of methamphetamine they distributed to Lander. Although the district court may disbelieve witnesses in its evaluation of a motion for a new trial, *Dowty*, 964 F.3d at 708, generally "[w]e decline to second-guess that court's evaluation of witness credibility" on appeal, *see Delacruz*, 865 F.3d at 1006. There is no basis to depart from that practice here. Even if the government's "witnesses were motivated by the potential for leniency, were memory-impaired from past drug use, and provided some inconsistent statements" the district court is not required to discredit their testimony and grant a new trial. *Id.* Moreover, "[w]e have repeatedly upheld jury verdicts based solely on the testimony of conspirators and cooperating witnesses." *Id.* (quoting *United States v. Buckley*,

525 F.3d 629, 632 (8th Cir. 2008)).  While some details changed in their stories, the cooperating witnesses told a consistent narrative tying Lander to the drug conspiracy, which was corroborated by testimony from government agents, Lander's own statement to authorities, and photo and video evidence.  Indeed, Lander admitted to purchasing methamphetamine from Torres and Duenas-Topete, among others, and to helping Duenas-Topete unload a tire containing several pounds of methamphetamine.  This evidence, combined with the district court's credibility determination, strongly supported the conclusion that Lander knew of and joined a drug trafficking conspiracy.  Thus, the district court did not abuse its discretion in denying Lander's motion for a new trial.  *See id.*

## C. Sentencing

Lander also argues the district court erred in calculating his offense level under the Guidelines and by imposing a substantively unreasonable sentence.  "We review a sentence in two parts: first, we review for significant procedural error, such as an improper calculation of the advisory sentencing guidelines range; and second, absent significant procedural error, we review for substantive reasonableness." *United States v. Sigillito*, 759 F.3d 913, 940 (8th Cir. 2014) (quoting *United States v. Barker*, 556 F.3d 682, 689 (8th Cir. 2009)).

Lander claims the district court's drug quantity calculation was based on unreliable evidence and that he was entitled to a minor role adjustment.  We need not resolve Lander's challenges to the Guidelines calculation because, even if he were correct, any alleged error was harmless because his advisory sentencing range would remain unchanged.  *See id.* at 941.  Based on the district court's rejections of his arguments, he had an offense level of 38, which resulted in a Guidelines range of 360 months to life based on his criminal history category.  In addition to Lander's offense level calculated under his offense-specific guideline, he was subject to a career offender enhancement, which established a floor for his offense level.  *See* U.S.S.G. § 4B1.1(a), (b).  Lander does not contest that the career offender enhancement applies to him.  Since the statutory maximum sentence for Lander's

conviction was life imprisonment, his Guidelines range would still be 360 months to life, even with a lower drug quantity and a minor role reduction, due to the career offender provision. *See id.*

Finally, Lander claims his sentence is substantively unreasonable. We review the substantive reasonableness of a sentence for abuse of discretion. *Sigillito*, 759 F.3d at 940. "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *Id.* (quoting *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc)). Lander fails to overcome the presumption of reasonableness afforded to his sentence of 360 months of imprisonment, the bottom of his Guidelines range. *See id.* at 941. The district court extensively considered the relevant sentencing factors under 18 U.S.C. § 3553(a) and addressed Lander's arguments in favor of mitigation. It noted the trial evidence showed "Lander was involved in the distribution of methamphetamine in significant quantities for a period of years." Lander had an extensive criminal history, including two prior convictions for conspiring to manufacture or distribute methamphetamine. One of those was a federal conviction for which the district court had twice revoked his supervised release for lying to his probation officer and violating state law, among other things. The district court remarked that this newest instance of drug trafficking began shortly after his term of supervision ended. Based on this history, the district court concluded Lander "had multiple opportunities through his various convictions and prison sentences over the years" to rehabilitate himself, but instead "when he's not in jail[,] [h]e sells methamphetamine." While the district court agreed there were some mitigating factors present, it could not "find anything less than 360 months to be a sufficient sentence in this case." Given the district court's consideration of the relevant factors, it did not abuse its discretion. *See United States v. Long*, 906 F.3d 720, 727–28 (8th Cir. 2018). Lander's arguments that the district court should have weighed the factors in a different manner are unavailing. *See id.*

-10-

## III. Conclusion

We affirm Lander's conviction and sentence.

_____